## Guy *v.* Stoecklein Baking Company et al., Appellants.

Argued April 18, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and RHODES, JJ.

*Con F. McGregor,* with him *Rose, Bechman & Dunn,*
for appellants.

*Fred. B. Trescher,* of *Kunkle, Walthour & Trescher,* with him *Maurice J. K. Davis,* for appellee.

OPINION BY PARKER, J., October 12, 1938:

On January 10, 1934, Russell A. Guy met with an accident while in the course of his employment with Stoecklein Baking Company and was disabled as a result of injuries then sustained. The claim petition which initiated this action was not filed until May 20, 1935, more than sixteen months after the accident. The sole defense interposed and now relied upon was that the action was barred by reason of the fact that it was not started within one year after the accident as required by the statute under which the claim was made. Referee and board found for the claimant, holding that the employer was estopped by his declarations and conduct from interposing the bar of the statute of limitations. On appeal to a court of common pleas the award was sustained and judgment was entered for the claimant.

The defendant, in answer to the claim petition, plead the statute of limitations as contained in Section 315 of the Workmen's Compensation Act of June 2, 1915, P. L. 736 (77 PS §602), which reads: "In cases of personal injury all claims for compensation shall be forever barred, unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this article; or unless, within one year after the accident, one of the parties shall have filed a petition as provided in article four hereof."

The claimant was injured by a fall from a delivery wagon which he was operating for the baking company and was totally disabled for about two weeks. After that period he returned to work for the defendant, continuing until June 6, 1934. As a result of the accident he again became incapacitated for work and on June 27, 1934, he submitted to an operation for removal of

a kidney. As a result he was totally disabled from June 6, 1934, to December 27, 1934, when disability ceased. It was for these two periods of disability that compensation was awarded. The baking company paid the hospital bill and the physician's bill for the first thirty days, but we find no evidence in the record as to the date at which the bills were actually paid.

We will refer to the testimony upon which the appellee depends to show an equitable estoppel. The claimant testified that in the latter part of August, 1934, when he was able to walk, he went to the bakery and saw his employer, John Stoecklein and had this conversation with him: "Q. What did you say to him, if anything? A. I asked him if I could get my compensation and he told me he would take care of my compensation for me, that I didn't need to bother anything with it." Guy waited three weeks and then called again at the defendant's office. The testimony as to that interview is as follows: "Q. Whom did you talk to at that time when you went back again? A. Mr. John Stoecklein. Q. What did you say to him, if anything, and what did he say to you? A. He told me the same thing, that he would take care of the compensation and that I wasn't to bother with it. Q. He would take care of the compensation and you weren't to bother about it at all? A. Yes. Q. Did you rely upon the promise he made to you? A. Yes. Q. If he hadn't made that promise to you would you have filed this compensation claim? A. Yes. Q. Within the one (1) year period? A. Yes."

John Stoecklein was called by the defendant and we quote his testimony as to the conversation with claimant: "Did you ever promise to take care of this for Russell Guy? A. Mr. Russell Guy came in to me. I don't know the date; and asked me about it,—if there is anything that could be done about compensation. I said, 'I, myself, can't do it. I have to take it up with

the insurance company,' and I guess I did report it to the insurance company later on. May, or when it was. Q. Did you promise to pay him the compensation? A. Well, all the time I said, 'I myself can't pay it. It is up to the insurance company. They will have to fight this case out. It is not ours.' Q. You said 'it was up to the insurance company'? A. Yes. ...... Q. What did you tell this man when he came to see you? A. I told him, 'I myself can't promise no compensation. I myself have to take it up with the insurance carrier. Q. Did you take it up with the insurance carrier? A. As much as I know we did. Q. Are you positive that you did? A. I cannot say positively but I think we did. I had a girl in our office and she always took care of those records. Q. Did you tell him that you would see that he got compensation from the insurance carrier? A. No, I didn't say 'that I would see that he got compensation from the insurance carrier' but I said, 'it was up to the insurance carrier', 'that they would take care of him'. Q. Didn't you tell him that you would recommend to the insurance carrier that they would take care of it? A. I told him 'if he has any compensation coming that they would take care of him.' The insurance carrier—The Casualty Insurance Company is very prompt. Q. Didn't you think that he had any coming? A. Well, according to the accident he didn't have any coming because he wasn't off enough to have anything coming to him. As much as I know the insurance company took care of the hospital and doctor bill. Q. But you knew that he was off and was entitled to compensation? A. I don't know...... Q. And the claimant here states that you told him that you would take care of the compensation? A. I didn't say that I would take care of the compensation but I said that I would see that the insurance carrier would take care of him. The insurance carrier. Q. And that you would make a report of it? A. We would. Q. You say he came to you while

he was working and told you about it? A. Yes. Q. Did he come to you again after he stopped working? A. Not that I know of. He worked until he was operated upon. He worked all the time until he went to the hospital. Q. You don't know whether he came back to you after he stopped working or not? A. No. I don't recall that."

The payment of the bills of the hospital and the doctor did not stop the running of the statute. "It is clear the 'compensation' specified in those sections does not refer to the payments for 'reasonable surgical, medical and hospital services, medicines and supplies,' under section 306, clause (e), but only to those to be made to the injured employee, or in case of his death to his widow, children or dependents, and hence, as they include 'all compensation payable under this article,' or 'contemplated by this article,' they necessarily determine what the legislature meant by the use of that word in said article [§315], and prevent the inference sought to be drawn from section 306, clause (d) thereof": *Paolis v. Tower Hill C. Coke Co.*, 265 Pa. 291, 294, 108 A. 638.

We cannot dispose of the legal question involved without a definite understanding as to the facts which are to be accepted and the inferences to be drawn therefrom. On the branch of the case which is in controversy the so-called findings of fact by the referee consist of a recital of the evidence without any indication as to whether the testimony of the claimant or that of the defendant's treasurer is to be accepted or whether they may be harmonized. The board, however, has given us the benefit of a finding, or the equivalent of a finding, which is made the basis of its conclusion. We quote from the opinion of the board: "Consequently, there is ample testimony in this case from which the Referee could conclude as to the facts that a prompt report of this accident had been made to the employer and by the latter to its insurance carrier, and that the

employer had lulled the claimant into the belief that it was unnecessary for him to file a petition for compensation; that compensation, on the contrary, would be paid to him without the necessity of instituting legal proceedings before the compensation authorities."

The substance of this finding is that the employer assured the employee that compensation would be paid to him without instituting legal proceedings before the compensation authorities and that the employee was lulled "into the belief that it was unnecessary for him to file a petition." The testimony supporting this finding was given by the employee and was to the effect that an officer of the baking company told him in August and September, 1934, that "he would take care of the compensation" and that the employee was not "to bother about it at all," and this was in part corroborated by the admission of the same officer testifying for the defendant who admitted that he said to the employee that he "would see that the insurance carrier would take care of him." In determining the legal effect of these facts it is necessary to take into account other facts which were admitted or which we may glean from other parts of the board's opinion. The claimant at the end of two weeks after the accident was able to and did return to his employment where he continued to be regularly employed for four and one-half months. He then submitted to an operation necessitated, we must assume, by the accident. He recovered from the operation and disability ceased entirely on December 27, 1934. The baking company was insured and was looking to the insurance company to indemnify it against any claim that it would be required to pay. While the conversations between the officer of the baking company and the claimant took place the latter part of August and about the middle of September, 1934, the year for filing a claim with the compensation authorities did not expire until January 10, 1935.

It will be readily seen that the baking company could not possibly know in August or September, 1934, when the conversations took place, what amount of compensation, if any, would be due to claimant, and consequently it would then be impossible to finally agree as to just what amount would be paid claimant. If the parties did not agree upon the amount due the dispute could only be settled by filing a petition and submitting the controversy to the board as provided by law. It seems therefore that the fair inference from all the testimony is to the effect that the baking company agreed that it would endeavor to negotiate a settlement and that if such settlement could not be made it would see that a proper petition was filed preserving the rights of the claimant. The question for our determination is, therefore, whether under these circumstances the action of the baking company tolled the statute or amounted to a quasi estoppel which prevented it from pleading the statute and having the benefit thereof.

"A wide distinction exists between pure statutes of limitation and special statutory limitations qualifying a given right. In the latter instance time is made an essence of the right created and the limitation is an inherent part of the statute or agreement out of which the right in question arises, so that there is no right of action whatever independent of the limitation": 37 C. J. 686. Statutes of the latter kind are in the nature of conditions put by the law upon the right given: *Peters v. Hanger,* 134 Fed. 586, 588; *Wheatland v. Boston,* 202 Mass. 258, 88 N. E. 769.

In Pennsylvania, this distinction is recognized in those cases which hold that a pure statute of limitations must be plead (*Prettyman v. Irwin,* 273 Pa. 522, 117 A. 195), while it is not necessary to so plead in the case of a condition put by the law upon a substantive right given, even though such condition is sometimes spoken of as a statute of limitations: *Martin v. Pitts. Rys. Co.,*

227 Pa. 18, 21, 75 A. 837; *First Pool Gas C. Co. v. Wheeler Run C. Co.*, 301 Pa. 485, 489, 152 A. 685. The latter cases also throw light upon the distinction between the two kinds of limitations.

The condition which the carrier now seeks to assert is purely statutory and is a part of the substantive right to maintain an action for compensation and does not deal with the mere remedy for an otherwise subsisting right. The very act which gave to the claimant the right to maintain an action of this class expressly provided that such right should be forever barred unless the parties agreed upon the compensation payable or filed a petition as required: *Ratto v. Penna. Coal Co.*, 102 Pa. Superior Ct. 242, 247, 156 A. 749.

"Where a statute fixes the time within which an act must be done, as for example an appeal taken, courts have no power to extend it, or to allow the act to be done at a later day, as a matter of indulgence. Something more than mere hardship is necessary to justify an extension of time, or its equivalent, an allowance of the act nunc pro tunc": *Schrenkeisen v. Kishbaugh*, 162 Pa. 45, 48, 29 A. 284. Also, see *Singer v. D. L. & W. R. Co.*, 254 Pa. 502, 98 A. 1059; *Harris v. Mercur*, 202 Pa. 313, 51 A. 969. "It does not follow, however, that the running of this statute of limitation may not be tolled by the declarations and conduct of the parties invoking its protection": *Horton v. West Penn Power Co.*, 119 Pa. Superior Ct. 465, 475, 180 A. 56.

We deem it clear that the limitation in section 315, with which we are concerned, is not a pure statute of limitations: *Ratto v. Penna. Coal Co.*, supra; *Horn v. Lehigh Valley R. R. Co.*, 274 Pa. 42, 117 A. 409; *Wise v. Cambridge Springs Boro.*, 262 Pa. 139, 104 A. 863. We must therefore be guided by those decisions which deal with limitations which are a part of the substantive right to maintain the action and not by those which deal with the mere remedy for an otherwise subsisting right.

The Supreme Court, in *Wise v. Cambridge Springs Boro.,* supra (p. 144), in dealing with another section of the Workmen's Compensation Act which provides that certain appeals may be taken if so done within a fixed time—a situation parallel to the one we are considering—thus stated the circumstances under which an appeal would not be barred by delay beyond the period fixed by the statute: "Where a party has been prevented from appeal by fraud, or by the wrongful or negligent act of a court official, it has been held that the court has power to extend the time for taking an appeal: *Zeigler's Petition,* 207 Pa. 131; *York County v. Thompson,* 212 Pa. 561. But where no fraud or anything equivalent thereto is shown such appeals cannot be allowed: *Dunmore Borough School District v. Wahlers,* 28 Pa. Superior Ct. 35; *Guyer v. Bedford County,* 49 Pa. Superior Ct. 60. The mistake or neglect of the attorney for the party desiring to appeal is not sufficient ground for relief: *Ward v. Letzkus,* 152 Pa. 318, 319." Again, in *Horn v. Lehigh Valley R. R. Co.,* supra (p. 44), in considering this same section 315 with which we are here concerned, the Supreme Court used this language: "While the governing sections are mandatory, and she is presumed to know the law, we have held, where a party has been prevented from doing an act through fraud or circumstances that amount to fraud, the court might extend the time within which to do the act."

When our courts in such cases speak of "fraud" as a ground of estoppel, the term is used in a broad sense and includes an unintentional deception, as is made clear by a statement in the opinion in the Horn case (p. 44): "Where a person is unintentionally deceived as to his rights by one who has authority to act in the premises, courts will not, if it is possible to prevent it, permit such deception to work an injury to the innocent party. Here the widow was misled by the statement

of the board's officer. She, no doubt, could have had the paper delivered in Harrisburg on the date named, had she known that was necessary." This principle has been most frequently applied in this state in those cases where the innocent party has been deceived or misled by a public officer, by a court officer, or by officers of quasi judicial tribunals: *Zeigler's Petition*, 207 Pa. 131, 56 A. 419; *York County v. Thompson*, 212 Pa. 561, 61 A. 1024; *Wise v. Cambridge Springs Boro.*, supra; *Horton v. W. Penn Power Co.*, supra. We are unable to see any sound or logical reason for holding that the statute is not tolled where the deception or misleading is by the very party who seeks to take advantage of the limitation. Expressed in another way, the quasi estoppel should be equally effective against a party who is responsible for the delay.

When defendant, by its officer, promised to pay compensation and at the same time insisted that claimant should not bother with compensation, he must have meant that he should not bother starting an action by filing a petition. It would be ridiculous to say that the claimant was not to bother about the payment of compensation when he was at the same time promised that he would receive that very thing. The only reasonable inference is that he was not to bother about compensation proceedings. Now when the defendant, by its officer, promised on two occasions to see that the injured party received compensation and each time coupled the promise with a virtual condition that claimant should not file a petition for compensation and the claimant acted on the promise by postponing the filing, we do not see how it can be said that the claimant was not deceived, at least unintentionally, and that he was thereby lulled into a feeling of security.

We have support for our conclusion in the case of *Armstrong v. Levan*, 109 Pa. 177, 1 A. 204. Armstrong, a prothonotary, neglected to properly index a judgment

and as a result Mrs. Levan, the plaintiff, suffered a loss. She brought trespass on the case and was met by a plea of the statute of limitations, six years. The Supreme Court, in overruling the force of the plea, said (p. 179): "The conversation referred to occurred before the statute had run, and it was a distinct promise to pay in consideration that the plaintiff below would not sue. If, therefore, she relied upon this promise; if she was thereby lulled into security, and thus allowed the six years to go by before she commenced her suit, with what grace can the defendant now set up the statute? The promise operated not to revive a dead tort, but as by way of estoppel. It has all the elements of an estoppel. The plaintiff relied and acted upon it; she has been misled to her injury; but for the defendant's promise she would have commenced her action before the six years had expired. We think the learned judge. below was right in holding that the six years would only commence to run from the date of the promise."

It is true that the plea entered in the Levan case was under a pure statute of limitations as opposed to a condition and the statute affected the remedy alone, but if the plaintiff could be said to have been deceived and lulled into a sense of security in the Levan case, so was the claimant here. The exact language used in the Levan case was (p. 178): "He said that I should not sue, that if Mrs. Levan suffered any loss by reason of this mistake he would make it good to her; that she should not lose anything through his mistake." The language used closely resembles that used in the present case. We cannot distinguish that situation from the present one. It will be noted in this connection that the suit was in trespass and not in assumpsit on the promise. We are of the opinion that there was sufficient evidence to support the findings of fact and that the court below correctly held that such facts would

sustain the conclusion that the defendant was estopped from pleading the one year limitation.

The question next arises as to how long the claimant had to file a petition. Was it a reasonable time or one year from the time the promise was made? The legislature thought that one year was a reasonable time within which to bring such actions and under the circumstances we think that that same limitation should be applied to run from the date of the conversation between the claimant and the officer of the defendant company. This was precisely what was held in *Armstrong v. Levan,* supra. There the mistake in indexing was made April 9, 1874, and the conversation about paying the judgment was had April 8, 1879, the error not having been discovered until late in 1878. The suit in trespass was begun within six years of the date of the alleged promise. The court said (p. 180) : "We think the learned judge below was right in holding that the six years would only commence to run from the date of the promise." So here, we hold that the claimant had one year from the date of the conversations within which to file his claim, provided the defendant did not in the meantime file a petition. The claim was so filed within approximately eight months of that time.

Recognizing the force of the decisions which distinguished between a pure statute of limitations and a statute which qualifies the granting of a substantive right by condition as to the time within which such action may be maintained and that provisions of the latter class are mandatory, we are of the opinion that a defense such as is interposed here ought not to be sustained upon a doubtful weight of evidence and that the proofs should be clear and persuasive. We cannot read the opinion of the board without concluding that it was persuaded that the proofs here offered were clear and convincing.

The judgment is affirmed.