Rowles *v.* State Workmen's Insurance Fund et al.,
Appellants.

Argued April 19, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Hirt, JJ.

*Francis A. Dunn,* for appellants.

*George Jerko,* for appellee.

Opinion by Parker, J., July 19, 1940:

The main question raised on this appeal is whether the claimant has lost his right to receive workmen's compensation from his employer by reason of his failure to file a claim against it within the time prescribed by statute.

William O. Rowles, on September 28, 1936, was in the employ of United Mine Workers of America, District No. 2, as check weighman at a plant of Johnstown Smokeless Coal Company when he met with an accident in the course of that employment. There having been no agreement upon compensation and the claimant having failed to file a petition for compensation claiming anything from the union within one year after the accident, all claims for compensation against the union are barred (Act June 2, 1915, P. L. 736, §315), unless there be some reason, such as waiver, estoppel or the like, on account of which the limitation of the

statute may not be applied: *Guy v. Stoecklein Baking Co.*, 133 Pa. Superior Ct. 38, 45, 1 A. 2d 839; *Horton v. W. Penn Power Co.*, 119 Pa. Superior Ct. 465, 180 A. 56. Rowles filed a claim which reached the board on September 27, 1937, one day before the expiration of the year after the accident, but in that petition he named the coal company as his employer. That claim petition did not name any insurance carrier. However, more than a year after the accident the board sent some kind of a notice to Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, the union's insurance carrier. Threshermen filed an answer denying that it had a policy covering the Johnstown Smokeless Coal Company, that claimant had suffered any disability of sufficient duration to support a claim, and that the weekly wage of the claimant was as large as stated in the petition. It soon became apparent that the wrong employer had been named. Cf. *Ross v. Mayflower Drug Stores*, 338 Pa. 211, 12 A. 2d 569.

About thirteen months after the date of the alleged accident, the claimant filed a second claim petition naming the union as his employer and the board gave this second claim the same number as the first claim petition, attempting to treat the new claim as an amendment of the one filed within a year. Answers were filed by the coal company, by the State Workmen's Insurance Fund, carrier for the coal company, and by the union and its carrier. These answers denied liability and set up the true facts with relation to the insurance companies which protected the respective employers. Defendants also claimed the benefit of the statute of limitations.

After hearing, the board reversed an order of a referee dismissing the claimant's petition and made an award

of $12.85 [1] against the union and its insurance carrier, Threshermen, for total disability for six-sevenths of a week and dismissed the claim against the coal company and its insurance carrier. A common pleas court affirmed the award and entered judgment for the claimant. The ground of the decisions of the board and the court below was that the defendants, the union and its carrier, were estopped by their conduct from claiming the benefit of the statute of limitations.

It is most apparent from the testimony, and it was so found by the board, that the claimant was an employee of the union and not of the coal company. Consequently, the claim was properly dismissed as to the coal company and its carrier, the State Workmen's Insurance Fund. The main question for consideration is whether the union and its insurance carrier are estopped by their conduct from taking advantage of the limitation in the statute. As an answer depends upon the exact facts proved, it will be necessary to refer to the evidence in some detail.

Claimant gave prompt notice of the accident to the union and it, in turn, advised its insurance carrier, Threshermen. In response to the notice that carrier, through its adjuster, Charles H. Moore, investigated the accident and advised J. W. Stephenson, compensation adjuster for the union, that he had contacted the claimant and learned that claimant had not at the time been disabled for a sufficient time to be entitled to compensation. Although Threshermen paid the doctor's bill, that payment did not stop the running of the statute: *Guy v. Stoecklein Baking Co.*, supra, p. 43; *Paolis v. Tower Hill C. Coke Co.*, 265 Pa. 291, 294, 108 A. 638. No claim was made or is now urged for compensation for that initial period. Between September 1 and

---

[1] It is suggested that this claim is pursued and resisted on account of a possible later claim for a larger amount and to protect the parties in that respect.

September 16, 1937, claimant was again disabled as a result of the original accident, and J. W. Stephenson undertook to prepare and file a claim on behalf of Rowles for the September disability but fell into the error of naming the coal company as the employer and making it a defendant when he should have pursued the union and its carrier. He attempted to correct the error after the limitation of one year had expired by filing a new petition and appearing as counsel for claimant at the hearing.[2]

The claimant in asserting an estoppel relies upon alleged conduct of the union and conduct of a representative of Threshermen. With reference to the carrier, claimant depends upon an alleged statement made by Moore to Stephenson and upon another statement made by Moore to Rowles. Stephenson testified that in October or November, 1936, Moore stated to the witness that the claimant was not then entitled to any compensation but that he would take care of the "doctor bill". We quote further from Stephenson's testimony: "Just as he was leaving the office I asked him how about this man if something develops in the future. He said, 'All right, if anything develops, we'll take care of it. You don't need to bother any more with it.'" Moore denied that he made such a statement. The claimant also depends upon his own testimony which was as follows: "A. Well, we [Moore and claimant] met outside. We walked in the shop. He opened his brief case and he asked me a question, I can't just recall, something about time off or something. I said, 'No, you don't owe me nothing only the doctor bill.' I said, 'If you pay that. It's not bad now, but I don't

---

[2] Mr. Stephenson probably undertook to act for the claimant by authority of §437 of the Workmen's Compensation Act, as amended by Act June 4, 1937, P. L. 1552, 77 PS §1025, but that section was held unconstitutional on March 27, 1939, by the Supreme Court: *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 493, 7 A. 2d 302.

know how soon it will be.' 'Well,' he says, 'we'll take care of that after.' That's all. I don't remember whether I signed anything or not. He took some papers out of his brief case, but I can't remember whether I signed or not ...... Q. And you, then questioned him about a future doctor bill and he said words to the effect, 'We'll take care of it when it arises'? A. Something like that."

Neither of the statements attributed to Moore even suggested that the carrier or Moore would file a claim petition for Rowles. Moore did not promise Stephenson to take any other action than to protect the insured and to satisfy the obligations of the insurer to the insured under the terms of the insurance policy and the compensation law. He said in effect that he would comply with the contract and properly defend any action that might be brought by claimant. At that time Stephenson had taken no steps to represent claimant. We find no justification for the assumption that Moore undertook to present or pay a claim for future disability whenever presented, or more specifically that he undertook to pay a claim for a disability that had not then occurred and was not then in sight. In no view of the matter was that promise one made to claimant and he could not have relied upon it.

Rowles did not rely upon any statement made by Moore to him for he was advised by the board to file a claim within a year and he did so. Not having relied upon any such statement he cannot assert an estoppel. We must look further for any evidence sufficient to support the claim of estoppel.

The claimant also relies upon the facts that the employer caused its compensation adjuster, Stephenson, to file a petition for compensation on behalf of claimant, that the claim filed by him was against the coal company, and that a claim was not filed against the union until after a year from the date of the accident. There was testimony tending to show that Stephenson,

employed by the union as a compensation adjuster, had represented members of the union in a large number of cases prosecuted against coal companies and that he had filed claims for and represented the employees at hearings. Those were cases where there was no conflict of interest between the claimant and the union, but here the interests of the two were opposed. There is, however, not an iota of direct testimony that Stephenson was actuated by any improper motive in handling this claim; it was a typical example of just such a mistake as was to be expected of one not learned in the law. Consequently, there was no finding of fact by the board—and there could have been none—that there was present any fraud, intentional or unintentional. Not only so, but there was not any testimony as to any conversations or dealings between claimant and Stephenson with reference to filing or prosecuting a claim against anyone. We have only the bare facts as to Stephenson's employment by the union including a duty of representing the members of the union and that Stephenson prepared and filed the petitions for claimant and appeared at the hearing and acted as counsel for him. On the other hand, we have the further fact that the claimant, Rowles, signed his petition under oath wherein he stated that the coal company was his employer, thereby showing that he made the same mistake that was made by the adjuster. Under these circumstances is the union estopped?

The limitation contained in §315 is a special statutory limitation qualifying a given right and is not a pure statute of limitations. Time is here made an essence of the right created and there is no right independent of the limitation, no right unless a claim is made within a set period. There are numerous decisions dealing with limitations which are a part of a substantive right as distinguished from those which deal with the mere remedy for an otherwise subsisting right. In the claims with which we are dealing appeals

cannot be allowed nunc pro tunc, as a matter of indulgence, or because of a mere hardship shown: *Schrenkeisen v. Kishbaugh,* 162 Pa. 45, 48, 29 A. 284. Fraud or its equivalent must be shown (*Dunmore Boro. Sch. Dist. v. Wahlers,* 28 Pa. Superior Ct. 35), which in this connection includes an unintentional deception: *Horn v. Lehigh Val. R. R. Co.,* 274 Pa. 42, 44, 117 A. 409. The evidence to support such a claim should be clear and precise, more than of doubtful weight: *Guy v. Stoecklein Baking Co.,* supra, p. 50.

As we have indicated, we search the record in vain for any direct evidence of fraud or even unintentional deception on the part of the employer or its agent, if he was such. The claimant was a member of the union which undertook to provide services for its members in compensation cases. Stephenson's prime business was to represent such members and he was loaned to the member for that very purpose with knowledge upon the part of both employer and employee of his relationship. It would seem that he thereby became the agent of the claimant. Claimant under oath stated that he was an employee of the coal company and Stephenson joined in the error by filing the claim in that form. Fraud or deception could not be inferred from the mere existence of the relationship such as it was. Neither will the law infer fraud or deception from a mistake without other circumstances. There is no evidence of any character that the employer or its agent or any authority undertook to do anything which it failed to do as in the Guy and Horn cases or in *Horton v. W. Penn Power Co.,* supra.

The board, in the opinion by its able former chairman, fell into error in interpreting the facts when it assumed that either employer or insurance company undertook to do anything which it did not do. Consequently, there was no ground for assuming that the claimant was lulled into a false sense of security. The

claimant must bear the consequences of the mistake of his counsel and his own mistake.

Judgment reversed and here entered for the defendant.