## Roberts *v.* Frick-Reid Supply Company et al., Appellants.

Argued April 24, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants.

*George A. Dawson,* for appellee.

OPINION BY BALDRIGE, J., July 23, 1942:

The claimant in this workmen's compensation case while in the course of his employment on April 22, 1934, fell from the edge of a material bin to a cement floor, a distance of 12 feet, fracturing both his kneecaps.

An open agreement was executed and compensation for total disability was paid until August 15, 1935, when a supplemental agreement was entered into which stated that the "condition of claimant's right leg resolved itself into industrial loss of use of the leg and the agreement should be one to cover loss of use of leg under 306-c of the Act." Compensation was to be paid from April 29, 1934, for a period of 215 weeks.

On February 21, 1938, before the expiration of the 215 weeks, the claimant filed a petition to review the agreement in which he alleged the loss of the use of not only the right leg, but also of the left leg. The defendant in an answer filed denied any disability to the left leg. On June 13, 1938, the claimant signed a final receipt acknowledging that there had been paid him $2474.65 for the loss of the use of his right leg as provided for in the agreement of August 15, 1935. Referee Jones, after hearings held on the petition to review, in his order dated January 20, 1939, found that the claimant had sustained a 50% partial disability of the left leg and compensation was ordered to be paid at the rate of $5.76 per week beginning June 13, 1938. An appeal to the board was filed by the claimant alleging that the industrial loss of the use of the right leg with a

partial disability of the left leg resulted in total disability. The board sustained the claimant's appeal and found that he was entitled to compensation for total disability, as of June 13, 1938, and ordered further payments of compensation on that basis.

An appeal to the court below followed. Before this appeal was heard the record was returned to the board at its request following the claimant's filing a petition for a rehearing in which the defendant was charged with securing the execution of the supplemental agreement on August 15, 1935, through misconduct of the defendant's adjuster and agent, and a rehearing was granted. In the meantime the claimant was paid compensation for 215 weeks for the loss of the use of the right leg and 50% partial disability for 85 additional weeks, or until January 28, 1940, under the provisions of section 306-b when the 300 week period for partial disability expired. The total amount paid claimant was $2967.76.

After a rehearing granted by the board the referee, to whom the case was remanded, found in his first conclusion of law, which was not disturbed by the board, that the injury claimant sustained had caused disability which resolved itself into the loss of the use of the right leg "for which he has been paid; and since as a result of the same accident he has sustained another injury to his left leg, which has rendered him totally disabled ......" The board, in sustaining the referee in his conclusion that the claimant was totally disabled, found the following: "7. The Board finds as a fact that as a result of the accidental injury sustained by the claimant he suffered the industrial loss of the use of the right leg and a 50% partial disability of his left leg which taken together constitutes a total disability for industrial purposes." The board ordered the payment of compensation at the rate of $11.51 per week for total disability. The court below dismissed the defendant's exceptions and affirmed the action entered by the board. This appeal followed.

This award indicates a misconception of the law. Section 306-c of the Act of June 2, 1915, P. L. 736, 77 PS §513, provides, inter alia, for the payment of compensation for the permanent loss of a leg, and that includes all incapacity whatever it may be by reason of that loss, whether the incapacity is total, partial, or none at all: *Lente v. Luci,* 275 Pa. 217, 119 A. 132. With the injury to the right leg admittedly paid for as provided by statute and a receipt executed prior to the filing of the petition to review the supplemental agreement, it was eliminated from further consideration in determining the extent of claimant's disability.

In *Bausch v. Fidler,* 277 Pa. 573, 121 A. 507, the claimant suffered the loss of his left arm and right leg, and partial disability to his right wrist. It was held that he was entitled to compensation for the leg and arm under section 306-c and for partial disability for the injured wrist, but the latter injury was entirely separate and distinct from the disability paid for in the permanent loss of the leg and arm. See, also, *Davis v. Asquini and American Casualty Company,* 114 Pa. Superior Ct. 60, 173 A. 672; *Barlock v. Orient Coal & Coke Company et al.,* 114 Pa. Superior Ct. 228, 173 A. 666; *Croll v. Miller et al.,* 133 Pa. Superior Ct. 448, 449, 2 A. 2d 527; and *Melfi v. Dick Construction Company,* 148 Pa. Superior Ct. 406, 25 A. 2d 743.

We expressly held in the Barlock case that where an employee suffers the permanent loss of a leg and is entitled under section 306-c to be paid compensation for 215 weeks, if at the expiration of that period he had a partial disability separate and distinct from the loss of the leg as a result of injuries sustained in the same accident, he is entitled under section 306-b to compensation for partial disability for a further period of 85 weeks.

The foregoing cases and many others hold that disability paid under section 306-c cannot be considered in

determining the disability for injuries to other portions of the body within section 306-b as the board did in this case. All the evidence indicates the disability, other than that resulting from the loss of the right leg, was partial, not exceeding 50%.

Dr. C. W. Page, the only physician testifying for the claimant, and Dr. W. B. McLaughlin, an impartial expert called by the referee, expressed opinions that Roberts could do some work; that the injury to the left leg caused but partial disability. The medical testimony offered upon the part of the defense was that the claimant had recovered from all disability in the left leg. The board's finding, which we must accept, was that there was 50% partial disability to claimant's left leg.

The claimant contended, and the board found, that he was induced to sign the supplemental agreement by the misconduct of the adjuster of the defendant insurance carrier. It must be borne in mind that in the proceeding started by the claimant to review the supplemental agreement the board found the permanent loss of the right leg and that the left leg sustained a 50% partial disability. In so far, therefore, as the extent of claimant's disability is concerned it has been determined, not under any agreement, but by express findings of the board. Whether or not the supplemental agreement, which set forth that the claimant's disability was confined to the right leg, was signed as the result of misconduct does not affect the claimant's rights. It has been superseded by the board's findings. The claimant does not contend that he has additional injuries, but that they constituted total disability, notwithstanding he executed a receipt on June 13, 1938, acknowledging payment of compensation for the 215 weeks as provided in the supplemental agreement.

We may add that the petition for rehearing was not filed until July 1, 1940, almost five years after the

14

original agreement was signed and over two years after the filing of the petition to review the supplemental agreement and that no mention was made prior thereto of any fraud, coercion, misrepresentation, or other form of misconduct. Not a word of testimony was offered in support of the allegation of misconduct at the hearing before Referee Jones when the supplemental agreement now attacked was under consideration and an award for 50% partial disability was made first for the left leg. The testimony at this late date relied upon was given by the claimant and his wife. The claimant, who can read and write, stated that when he signed the agreement John D. Stedeford, Esq., who was then the adjuster of the defendant insurance carrier, knew that the left leg had not recovered and said that if it "wasn't cleared up by the end of the 215 weeks, that I could have the compensation continued without any trouble." He did not testify that Stedeford made any representations as to the length of time the payments would be extended or to do anything he did not do. They were in fact, as above noted, continued 85 additional weeks until 300 payments were made. Furthermore, the adjuster, when the supplemental agreement was executed, was acting upon information from Dr. Carpenter. From the claimant's testimony it could not be said that any false or fraudulent representations were made: *Rowles v. State Workmen's Insurance Fund et al.,* 141 Pa. Superior Ct. 193, 200, 14 A. 2d 551.

The remaining witness relied upon was his wife. She testified that she was present the time Stedeford made the alleged representations and that he said the payments would continue until the time her husband would fully recover; that Stedeford said he hoped by the time the right leg had been paid for the left leg would be fully recovered but "if the leg hadn't cleared up that they would continue their payments until the five hundred weeks had expired without any trouble to us;"

that the agreement signed was just temporary until it was found out how long the disability would be. She testified further that she had discussed the matter before signing the agreement, with Mr. E. S. Koenig, who was the superintendent of the claim department of the defendant company, and that she called his attention to the fact that the agreement presented included only compensation for the right leg, and he expressed the expectation that at the time the 215 weeks had expired the left leg would be all right, but if not compensation would continue without any trouble to the claimant. She also stated that she asked Dr. Carpenter about her husband's left leg and he said he was not "interested in that. I'm only interested in the right leg," and suggested that she see their family doctor. She and the claimant both stated that the only reason they had not testified as to these alleged misrepresentations at the original hearing was that neither the counsel for the claimant nor the referee asked any questions respecting the alleged misconduct.

Mr. Stedeford, who is now in the Army and located at Langley Field, Virginia, unqualifiedly denied in answer to the interrogatories filed that he made these representations as testified to by the claimant and his wife. Koenig stated that he came to Pittsburgh about a month before the signing of the agreement and that he saw neither Mr. nor Mrs. Roberts before they had executed the agreement; that later when she called at the office to see about receiving payments on different occasions she never referred to any representations made by Stedeford of which they now complain. Dr. Carpenter likewise denies the testimony of Mrs. Roberts to the effect that he said he was not interested in the left leg or that he suggested to her that she ask her family doctor about it. He said he did examine both the right and left leg but felt that the claimant had fully recovered in the left leg and so advised the defendant company.

The board in its findings makes no reference to the alleged promise that in the event the left leg would not be fully recovered at the end of 215 weeks compensation would be paid for 500 weeks. Its fifth finding reads as follows: "5. The Board finds as a fact from the testimony of the claimant and his wife that at the time the supplemental agreement was executed the adjuster of the defendant insurance carrier informed the claimant that should the condition in the left knee be present at the expiration of the 215 week period provided for the industrial loss of the use of the right leg the claimant would receive further compensation for his disability."

The burden was upon the claimant in his endeavor to set aside a final receipt to establish improper conduct and that a mistake had been made: *Johnston v. Payne-Yost Construction Co. et al.,* 292 Pa. 509, 141 A. 481. Former Chief Justice KEPHART in *Eberst v. Sears Roebuck & Co.,* 334 Pa. 505, 6 A. 2d 577, said p. 511: "It is the duty of our tribunals not merely to ascertain whether there is some evidence to support the setting aside of the final receipt, but whether the evidence is definite and specific and of the required quantity and quality."

In *Shuler v. Midvalley Coal Co.,* 296 Pa. 503, 146 A. 146, the Supreme Court said that while the courts in compensation cases in applying rules of evidence have been very liberal in permitting claimants to establish coercion when an issue of compensation depends on it, when compensation has been paid and the final receipt given, evidence to overthrow it later must be of a definite nature.

*Kitchen v. Miller Bros. Co. et al.,* 115 Pa. Superior Ct. 141, 174 A. 919, does not control this case. There the original compensation agreement entered into was under section 306-c and by improper conduct had been modified providing for compensation for a shorter period of time than the employe was entitled to under

the compensation act. We held in such circumstances that the limitation period within which the claimant was required to move to set aside the agreement obtained was a period fixed by section 306-c for the permanent loss of a member, which the claimant actually suffered.

It is unnecessary to consider the other assignments of error as those we have discussed are controlling in this appeal.

Judgment is reversed and now entered for the appellants.