## Crimi v. Supreme Clothes, Inc.

*LaBrum & Doak*, for appellant.

*Montemuro & Scuderi*, for appellees.

REIMEL, J., August 30, 1961.—This case has had a history of protracted litigation stemming from an admitted accident to claimant, Vincent Crimi, on September 24, 1951. The parties entered into an open compensation agreement, which provides that "claimant was picking up a bundle of coats to put on a table, felt a pain in his back. He suffered acute low back sprain, acute sprain right shoulder."

On December 20, 1951, claimant executed a final receipt, acknowledging compensation payments for a period of one and two-sevenths weeks, ending October 21, 1951. On October 28, 1953, claimant filed a petition to set aside the final receipt. After hearings before the referee, the final receipt was set aside and compensation for total disability was reinstated. Defendant appealed, and the board, while sustaining the referee's finding on the issue of timeliness of claimant's petition, remanded the matter to the referee for the appointment of an impartial physician to assist in resolving the medical questions raised. Further hearings were held and after the appointment of two impartial physicians the referee again awarded compensation to claimant. An appeal followed and the case was remanded for further testimony. The referee again found in favor of claimant and awarded compensation for partial disability in varying amounts up to the expiration of the 300-week period, which expired on July 7, 1957, and thereafter total disa-

bility. Defendant subsequently appealed, and the board, in a decision filed on November 16, 1960, affirmed the referee's decision. The matter is now before this court on defendant's exceptions to the decision of the board.

The record discloses the following facts: Claimant was a tailor working for defendant and on September 24, 1951, while at work lifting a bundle of coats, he slipped with his left foot, falling on his left knee and felt a snap in his lower back. Claimant reported this incident to his employer and, on September 28, 1951, he quit work and went to see his family physician. During the course of his absence from work, claimant received medical treatment, and on October 22, 1951, he returned to work. Thereafter, he was requested to sign an agreement calling for the payment of compensation in the amount of $25 per week. At this point, he had returned to work but testified that "The Thresherman's, whatever they call them, Insurance had called me in when I was well again and asked me to sign, so I refused to sign, I says, 'I don't know what is going to happen, I may have to make a case out of this.' "

Later, on December 20, 1951, his employer's bookkeeper called claimant into the office and said: "This paper came to you with a check, would you mind signing it." Claimant hurriedly signed it. Thus it was that claimant unknowingly signed a final receipt which evidenced on its face that compensation was paid up to and including October 21, 1951, the date of his return to work.

Claimant continued his work with defendant until about the middle of 1953, when he was laid off because he could not perform his work satisfactorily. Since that time, claimant has had intermittent employment in his job as underpresser at various establishments, but he has been unable to hold a steady job due to his back injury.

Prior to October 21, 1953, the State compensation authorities notified claimant: ". . . you have the privilege of filing a petition to set aside the final receipt within two years from the date to which payment is made as evidenced by such final receipt. In this case the receipt was signed December 20, 1951." Claimant filed his petition to set aside the final receipt on October 28, 1953.

It is the contention of defendant that the filing of the petition to set aside the final receipt was barred by the two-year period of limitations provided for in section 434 of The Workmen's Compensation Act of June 2, 1915, since it was filed more than two years after the date to which compensation had been paid.

Section 434 of The Workmen's Compensation Act of June 2, 1915, P. L. 736, art. IV, sec. 434, 77 PS §1001, as amended, provides in part as follows: ". . . the board, or a referee designated by the board, may, at any time within two years from the date to which payment is made as evidenced by such final receipt, set aside a final receipt, upon petition filed with the board, if it be conclusively proved that such receipt was procured by fraud, coercion, or other improper conduct of a party, or is founded upon mistake of law or of fact."

The wording of the above section is clear and unambiguous, and the court in a well-considered opinion in Silsley v. Pittsburgh Coal Company, 58 D. & C. 602 (1947), emphatically points out that the time limit prescribed by section 434 of The Workmen's Compensation Act begins to run on the date to which payment is made as evidenced by the final receipt, and not on the date of signing the final receipt.

Thus, in the instant case, claimant's petition to set aside the final receipt was not filed within the two-year time limit prescribed by section 434 of the act,

since compensation was paid to October 21, 1951, and this petition to set aside the final receipt was not filed until October 28, 1953, more than two years later. It is immaterial that the final receipt was signed on December 20, 1951.

Claimant, in support of his argument that his petition was timely, refers to the case of Mallory v. Pittsburgh Coal Company, 162 Pa. Superior Ct. 541 (1948). Both the Mallory case and Ketzel v. Hammermill Paper Co., 159 Pa. Superior Ct. 462 (1946), however, unlike the case before us, deal with the retroactive effect of the Act of June 21, 1939, P. L. 520, sec. 434, 77 PS §1001, to cases arising before the effective date of that act. Thus, in neither case was the court's determination of the date from which the two years should run material to the court's decision, since under Hartman v. Pennsylvania Salt Manufacturing Company, 155 Pa. Superior Ct. 86, the court was only obliged to calculate a "reasonable" time, in which the petition should be filed. The case of Davis v. Merck & Co., Inc., 166 Pa. Superior Ct. 429 (1950), also does not support claimant's contention. In the Davis case, the petition to set aside the final receipt, as later amended, was filed December 6, 1946, and payments of compensation under the supplemental agreement were to continue until December 27, 1944. Thus, the facts would indicate that the petition complied with the provisions of section 434 of The Workmen's Compensation Act, it having been filed "within two years from the date to which payment is made as evidenced by such final receipt." Furthermore, the suggestion by the court in the Davis case that the two-year period was to run from the date of execution of the receipt was not material to the decision, since the case was remanded for the taking of further testimony to determine whether a valid claim existed under section 434 of the act.

Although claimant's petition was not filed within the period prescribed by section 434 of The Workmen's Compensation Act, there are exceptional circumstances present in the instant case which prevent defendant from setting up the time provision of section 434 as a bar to claimant's petition. We agree with the court in Silsley v. Pittsburgh Coal Company, 58 D. & C. 602 (1947), that the doctrine of estoppel applicable to regular statutes of limitation should apply in compensation cases.

"Where a statute fixes the time within which an act must be done, as for example an appeal taken, courts have no power to extend it, or to allow the act to be done at a later day, as a matter of indulgence. Something more than mere hardship is necessary to justify an extension of time, or its equivalent, an allowance of the act nunc pro tunc": Schrenkeisen v. Kishbaugh, Coslett, 162 Pa. 45, 48, 29 Atl. 284.

"It does not follow, however, that the running of this statute of limitation may not be tolled by the declarations and conduct of the parties invoking its protection": Horton v. West Penn Power Company, 119 Pa. Superior Ct. 465, 475, 180 Atl. 56.

In Guy v. Stoecklein Baking Company, 133 Pa. Superior Ct. 38 (1938), the court states, at page 47:

"When our courts in such cases speak of 'fraud' as a ground of estoppel, the term is used in a broad sense and includes an unintentional deception, . . . This principle has been most frequently applied in this state in those cases where the innocent party has been deceived or misled by a public officer, by a court officer, or by officers of quasi judicial tribunals."

Facts are clearly present in the instant case for an estoppel to operate, barring defendant from raising the defense of the running of the two-year period of limitation under section 434 of the act. Claimant, as the referee found, was lulled into a feeling of security

in the late filing of his petition to set aside the final receipt due to a letter from the Workmen's Compensation Board dated October 19, 1953, stating: ". . . you have the privilege of filing a petition to set aside the final receipt within two years from the date to which payment is made as evidenced by such final receipt. In this case the receipt was signed December 20, 1951." Coming from an official source, claimant understood that he could rely upon the information stated, and he was led to believe he had two years from December 20, 1951, in which to file his petition to set aside the final receipt. To a layman, unskilled in legal matters, the date "December 20, 1951," coupled with the statement immediately preceding it, could not help but lead to an inescapable conclusion that claimant had until December 20, 1953, within which to file his petition. Claimant's having been thus misled by the board will operate as an estoppel against defendant's asserting the bar of the period of limitation under section 434: Wise v. Cambridge Springs Borough, 262 Pa. 139 (1918); Guy v. Stoecklein Baking Company, 133 Pa. Superior Ct. 38. If claimant had not been misled, he could have filed his petition by October 21, 1953. See Horn v. Lehigh Valley Railroad Co., 274 Pa. 42.

Both the referee and the board found as an additional ground for the imposition of an estoppel, defendant's delay of two months in obtaining claimant's signature to the final receipt after the last payment of compensation. The record discloses that defendant improperly conducted itself with respect to the method used in ultimately acquiring the execution of the final receipt. Claimant, according to the testimony, was never competely well. When he was asked to sign a final receipt by a representative of the insurance company, he refused, stating that he did not "know what was going to happen," that he "may have to make a case out of this." Defendant was, therefore,

aware of his reluctance to sign, and yet, by means of a subterfuge, defendant secured his signature to the final receipt. The bookkeeper at claimants' place of employment came to him while he was working and said, "This paper came to you with a check, would you mind signing it." Since claimant was a piece worker, he could afford to waste no time, and he went into the office and signed, as stated in his testimony, "figuring I was just signing for the check . . . in other words, it was an underhanded way of getting me to sign something I didn't even read . . ." Claimant was not apprised of the fact that this was a final receipt. Since it was due to defendant's improper conduct that claimant was misled as to the import of the instrument to which he placed his signature, it would be unjust to allow the period of limitation under section 434 to run against claimant who had no knowledge that he had to act to protect his rights. The period of limitations is certainly tolled where the deception or misleading is by the very party who seeks to take advantage of the limitation: Dosen v. Union Collieries Company, 137 Pa. Superior Ct. 213 (1939). The evidence offered by claimant was competent and substantial. His credibility and the weight of the evidence on any factual question was exclusively for the determination of the compensation authorities. If there is competent and substantial evidence in the record to sustain the findings of the board, they are conclusive and cannot be disturbed by the courts: Thorn v. Strawbridge & Clothier, 191 Pa. Superior Ct. 59 (1959).

In view of our desire to put an end to this protracted case, it is unfortunate that we must find the board and referee erred in the manner of computation of partial disability payments due claimant. In the award, the referee has found that claimant suffered a 55 percent partial disability from January 1, 1955,

until January 1, 1956. The testimony of claimant himself shows that he worked steadily during the latter six months of 1955, earning approximately $2,-500. As to the period from January 1, 1955, until July of that year however, the testimony would seem to indicate that claimant was unemployed. The evidence with relation to this period will require further consideration by the board. The burden was on claimant to show the extent of his disability. The testimony given will not support the finding that claimant was totally disabled during the period from January until July of 1955. When we say that the findings of the board must be supported by evidence, it means substantial evidence more than a mere scintilla, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion: Heurbin v. D. L. Clark Company, 140 Pa. Superior Ct. 406 (1940). The board may well find upon the taking of further testimony that claimant is entitled to total disability payments during the first six months of 1955. If that be so, then the award of compensation for partial disability for the period from July through December 1955 would be incorrect, since during that period claimant earned more than he was earning prior to his accident. The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, sec. 306 (b), as amended, 77 PS §512, has been interpreted to mean that no compensation is payable, regardless of loss of earning power, when an employe receives as much for his services as he earned before his injury: Scipani v. Pressed Steel Car Company, 150 Pa. Superior Ct. 410; Liberatori v. Scott Smith Cadillac Company, 172 Pa. Superior Ct. 121 (1952).

The referee's award of 15 percent partial disability for the period from January 1, 1956, until September 22, 1956, would also be incorrect in light of this section of the act since, during that period, claimant's earn-

ings were actually greater than his earnings prior to the accident.

We also disagree with the referee's and board's finding that claimant was totally disabled since October 27, 1958, and that he was entitled to compensation therefore. A fundamental difference exists between compensation claimants who are able to do light work in general and those so limited in capacity that they are only fitted to perform special service, i.e., a class of work not generally available. The latter class only are entitled to compensation for total disability. If the workman is, as a result of the accident, unable to do even light work of a general character, but is only fitted to do "odd" jobs, not generally obtainable, then it is to be assumed that such work is not obtainable and the burden is cast upon the employer to show that work is available which the workman is able to do. On the other hand, if the workman is proved able to do light work in general, it may be presumed that such work is available: Babcock v. Babcock & Wilcox Co., 137 Pa. Superior Ct. 517 (1939). Under the evidence presented in the instant case, there is neither a showing that claimant is not able to do even light work of a general character nor is it shown that remunerative employment in that class of labor is not available to him, such as to entitle claimant to compensation for total disability. On the contrary, the evidence shows that claimant is able and willing to do light work of a general character, and in the absence of evidence that such general work is unavailable to him it must be presumed that such work is available. The first impartial medical expert testified that "As far as lifting heavy objects he is one hundred percent disabled, and I don't think he should lift any heavy objects with the back in its present condition. If he has a job where there is no heavy lifting, doesn't have to stand on his feet for long periods of time, doesn't

have to do a lot of bending, he will probably be 25 percent disabled."

A second impartial medical expert testified, concerning claimant: "He is now partially incapacitated to the extent of 50 percent for any job requiring any muscular activity of his back such as his occupation as underpresser."

Thus, according to the medical testimony, while claimant was not fit for employment as an underpresser and while he was not capable of bending and lifting such as would lay stress on his back, there remained an ability to do light work of a general character. Claimant's own testimony supports such a conclusion when he states: "Now, I am able to do some light work, and they also have it in the Union that I am not allowed to do strenuous work because the doctor examined me, the Union doctor, and filled in a blank in that respect." Claimant, when asked why he could not do the work he was doing, testified: "Well, the work is too hard. This is piece work and I can't do it, can do light work where I don't have to rush."

Certainly this does not put claimant in the category of an "industrial nondescript" for he was available for light work of a general character, and there being no showing that such employment was unavailable to him either within or without the Union, we must presume that such work is available. There is not such relevant evidence as a reasonable mind might accept as adequate to support the conclusion that claimant was totally disabled. Since, however, this record must be remanded to the board for error in its calculation of partial disability payments, we deem it only just to allow claimant, should he so desire, to give further testimony for the purpose of showing that claimant is either unable to do light work of a general character or that remunerative employment in that

class of labor is not available to him such as might entitle him to compensation for total disability.

Accordingly, the record must be returned to the Workmen's Compensation Board for further proceedings and the court enters the following

### Order

And now, August 30, 1961, exceptions nos. 4, 5 and 6 of defendant and its insurance carrier to the decision of the Workmen's Compensation Board are hereby sustained; defendant's exceptions nos. 1-3 are hereby denied and the prothonotary is directed to remit the record to the said board for further proceedings in accordance with this opinion.