Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Temple University *v.* Madelyn Niemann, Appellant.

378

Argued March 4, 1976, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Sara Duffy,* for appellant.

*R. D. Harburg,* with him *Swartz, Campbell & Detweiler,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE MENCER: April 23, 1976:

The very hard facts in this case[1] reveal that 26-year-old Madelyn Niemann (claimant) was employed by Temple University (defendant) as a nursing supervisor assigned to defendant's psychiatric unit at the Philadelphia State Hospital. On April 14, 1969, this unfortunate claimant was violently punched in the face by a 240-pound psychotic patient. After receiving some minor emergency care that day, claimant continued to work her very long schedule until the weekend when, due to the fact that she could no longer stand the pain in her face, she was admitted to Temple Hospital for closed

---

1. "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."—John Adams [1770].

reduction of fractured nasal bones. Defendant's insurance carrier paid for that initial operation. Two days later claimant returned to work. Claimant continued to have considerable facial pain from her fractured nasal bones and, for that reason, paid little attention to a twinging pain in her neck, left arm, and chest.

Eventually, although it never completely disappeared, the pain in claimant's face subsided, while the pain in her neck, arm, and chest became more severe and therefore more noticeable. Claimant then began her very long search for the medical reasons behind those nonfacial pains and for relief therefrom.

Initially, claimant placed herself in the control of defendant's emergency room where, on her third consultation, a physician in charge finally asked for her medical history. It was then discovered that in the past claimant had suffered from endocarditis. However, after further study, it was determined that claimant's heart was not the cause of her medical problem. Claimant was then twice hospitalized for diagnosis and treatment of her nonfacial pains. During the course of this extensive testing, claimant made all of her doctors—by this time she had been examined by at least five more physicians in defendant's hospital—aware of the attack at Philadelphia State Hospital. Nevertheless, none of her doctors were able to pinpoint the cause of her problem or to diagnose any relationship between her nonfacial pain and the original attack.

In December of 1969, claimant, in desperate financial straits because of her inability to work and her large medical and hospital bills, approached the Director of the Temple Community Health Center, Dr. Gardiner, to inquire into the possibility of receiving workmen's compensation benefits because of her disabling nonfacial pain. Dr. Gardiner allegedly advised claimant that she could not file for compensation until she had medical proof that her condition was caused by the attack. Nevertheless,

claimant subsequently received $200 from the hospital which she characterized as "salary" or as being for "medical care."

From January 1970 until the end of May 1970, claimant asked for and received a somewhat less physically demanding job with defendant. After the termination of that position and after a 3-month search for lighter work, claimant finally secured a desk job with the Northwest Mental Health Center, where she was employed until she became totally disabled in late November of 1970. During 1970, claimant consulted with some ten more doctors, quite a number of whom were on the Temple University staff.[2] Finally, in January of 1971, claimant, who by this time was destitute, on welfare, and almost irretrievably addicted to prescribed narcotic drugs, was forced to seek aid from her mother who was a nurse in Louisiana. While in New Orleans, claimant was encouraged to seek help at the Ochsner Clinic. There she was examined and put through the common diagnostic procedures of a discogram. Almost immediately thereafter she was informed of a positive diagnosis of a herniated disk between C6 and C7 (the lower part of her neck). Claimant quickly returned to Philadelphia, sought counsel, and, on March 29, 1971, filed her claim petition.

After three extensive hearings on claimant's petition, Referee Irvin Stander issued a thorough opinion in which he reluctantly denied claimant benefits because of the untimeliness of her claim. The Workmen's Compensation Appeal Board (Board) affirmed and this appeal followed.

Our scope of review here, where the decision below was against the party carrying the burden of proof, is

2. Claimant was referred to and examined by a number of specialists, including a cardiologist, a rheumatologist, an ophthalmologist, a neurosurgeon, a rhinologist, a psychiatrist, and a specialist in physical medicine. During 1970 her pains were diagnosed as being caused by seven different things, including endocarditis, arthritis, psychosis, and the catchall cervical spondylosis.

limited to a determination of whether the findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence. *Workmen's Compensation Appeal Board v. Young,* 18 Pa. Commonwealth Ct. 515, 336 A.2d 665 (1975).

Initially, we note that, though there was a good deal of controversy below concerning the relationship of the injury from the assault on claimant to her subsequent disability, the referee found that the claimant had in fact been subjected to a compensable accident. Our examination of the record convinces us that the referee did not capriciously disregard competent evidence in so finding. However, unfortunately for claimant, the main direction of our review here focuses on the untimeliness of her petition for compensation.

Relevant to that inquiry is former Section 315 of The Pennsylvania Workmen's Compensation Act,[3] which provided in pertinent part:

"In cases of personal injury all claims for compensation shall be forever barred, unless, within sixteen months after the accident, the parties shall have agreed upon the compensation payable under this article; or, unless within sixteen months after the accident, one of the parties shall have filed a petition as provided in article four hereof. . . . *Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of sixteen months from the time of the making of the most recent payment prior to date of*

---

3. Act of June 2, 1915, P.L. 736, *as amended* by the Act of February 28, 1956, P.L. (1955) 1120, the amendment in effect at the time of claimant's "accident". Claimant contends that the Act of February 8, 1972, P.L. 25 (which extended the limitation period to two years) is applicable here. The law is clearly to the contrary. *See Overmiller v. D. E. Horn & Co., Inc.,* 191 Pa. Superior Ct. 562, 159 A.2d 245 (1960).

*filing such petition*: Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations." (Emphasis added.)

On its face, then, the petition was filed well beyond the 16-month limitation period set forth above. Nevertheless, claimant has set forth a number of reasons why she believes the limitation period should be tolled or the defendant should be estopped from raising the limitation period as a defense to her claim.

First, claimant alleges that, because she was under the exclusive medical care of the defendant employer hospital for some 20 months after the accident and because defendant "wantonly, recklessly and with gross negligence" failed to correctly diagnose her injury, defendant should be estopped from invoking a 16-month limitation period. This appealing contention finds no support in the law. Although defendant, in its medical capacity, might be guilty of negligence in failing to identify claimant's injury, its actions, *in its medical capacity,* cannot be said to be attributable to its administrative functions as an employer. This case, of course, involves the unique factual situation of an employer hospital's providing medical services to its employee for a fee. The allegedly negligent physicians treated claimant as their patient, not in response to any known duty of the hospital to claimant as its employee. Additionally, there was no duty, excluding acts of intentional deception, imposed upon the physicians *by The Pennsylvania Workmen's Compensation Act* to correctly diagnose, treat, or inform the claimant. It therefore cannot be said that their alleged negligence can be imputed under The Pennsylvania Workmen's Compensation Act to the administrative authorities of the hospital. We note that it is now well estab-

lished that, in order for the claimant to avail herself of estoppel under the Act, she must prove that the statements relied on must have reasonably lulled her into a false sense of security *as to her claim. Palmer v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 526, 308 A.2d 179 (1973). Here the referee, without capriciously disregarding competent evidence, found that the physicians' failure to properly diagnose the source of and reasons for the pain did not lull the claimant into a false sense of security relative to her claim with the hospital. We are restricted to that finding. *See generally* the analysis in 1 A. Barbieri, *Pennsylvania Workmen's Compensation and Occupational Disease* §5.42 (4) (1975).

Claimant next argues that the limitation period should be tolled because defendant's insurance carrier paid for her first hospitalization. However, the law has long been settled otherwise, *Pliscott v. Dumble,* 9 Pa. Commonwealth Ct. 292, 305 A.2d 918 (1973), *Dennis v. E. J. Lavino & Company,* 203 Pa. Superior Ct. 357, 201 A.2d 276 (1964), and we see no reason to disturb those well-considered pronouncements.

Claimant also contends that Dr. Gardiner either intentionally or negligently misled her when, in response to her inquiry, he allegedly advised her that she could not file for workmen's compensation benefits until she had medical proof that her condition was caused by her injury. The law in this matter is now well settled:

> "[T]he courts can permit a claim to be filed after the time prescribed in the statute if fraud or its equivalent is shown, which in this connection includes an unintentional deception. The evidence to support such a claim must be clear and precise, more than of doubtful weight. Rowles v. State Workmen's Ins. Fund, 141 Pa. Superior Ct. 193, 200, 14 A.2d 551 (1940). If a person is deceived, even unintentionally, as to his rights by one who has authority to act in the premises, courts will not ordinarily permit such

deception to work an injury to the innocent party. Guy v. Stoecklin Baking Co., 133 Pa. Superior Ct. 38, 47, 1 A.2d 839 (1938)." *Thorn v. Strawbridge & Clothier,* 191 Pa. Superior Ct. 59, 62, 155 A.2d 414, 416 (1959).

As we stated in *Palmer v. Workmen's Compensation Appeal Board, supra*:

"Virtually all of the cases, in which the courts have permitted a claimant to file a Petition subsequent to the period of limitation set in Section 315 of the Act, have involved situations in which the employer's actions or statements had lulled the claimant into a false sense of security as to the claim. The claimant was led in each case to believe that his claim would be taken care of by the employer and that there was no need for any immediate or further action on his part. See Iswaskewycz v. United States Steel Corporation, 7 Pa. Commonwealth Ct. 211, 298 A.2d 62 (1972) ; Angermier v. Hubley Manufacturing Co., 206 Pa. Superior Ct. 422, 213 A.2d 171 (1965) ; Blackburn v. Pennsylvania Turnpike Commission, 206 Pa. Superior Ct. 222, 213 A.2d 159 (1965) ; Herringshaw v. Travelers Aid Society, 206 Pa. Superior Ct. 219, 212 A.2d 914 (1965) ; Behanna v. Meyers, 163 Pa. Superior Ct. 200, 60 A.2d 608 (1948) ; Guy v. Stoecklein Baking Company, 133 Pa. Superior Ct. 38, 1 A.2d 839 (1938). The Superior Court has in fact stated that '[a] review of the cases in which the defendant has been estopped to avail itself of the limitations provision of §315 reveals that the statements relied on must reasonably lull the claimant into a sense of false security.' Fulton v. Philadelphia Rustproof Co., 200 Pa. Superior Ct. 467, 470-471, 190 A.2d 459, 461 (1963).

. . . .

"Neither an employer nor its insurance carrier may mislead an injured employee, but there is no

affirmative duty imposed upon either or both of them to advise the claimant of his rights. Dennis v. E. J. Lavino & Company, 203 Pa. Superior Ct. 357, 201 A.2d 276 (1964). And there is no greater duty for a public employer in such matters than there is for a private employer. Moreover, informing a claimant from the beginning that he has no claim or that his claim will not be paid is not in itself deceptive or misleading conduct on the part of the employer. Fulton, supra." 9 Pa. Commonwealth Ct. at 531-32, 308 A.2d at 182.

The burden of proving that she came within the strictures of the foregoing was on the claimant. *See Wilson v. United News Transportation Co.,* 215 Pa. Superior Ct. 317, 261 A.2d 338 (1969). The referee held that she had failed to meet that burden, and we feel that he so held without capriciously disregarding competent evidence. Additionally, we note that at that point in claimant's struggle no one had any idea that the present pain was in any way related to claimant's original injury.

Claimant further contends that the $200 payment to her from the defendant in December of 1969 constituted a "payment of compensation," thereby tolling the limitation period. The referee found that claimant's testimony revealed that this payment was made only "as salary" or "for medical care." A review of the record convinces us that he did not capriciously disregard competent evidence in so finding. Of course, as a medical contribution, the payment did not toll the statute. *See Dennis v. E. J. Lavino & Company, supra.* We also note that, in order for a claimant to prevail in proving that a payment was received "in lieu of workmen's compensation and not as salary," such a fact must clearly appear in the record. *Elkins v. Cambria Library Association,* 82 Pa. Superior Ct. 144 (1923). The referee found that it did not so appear and this finding is conclusive. *Hickey v. Cudahy Packing Co.,* 153 Pa. Superior Ct. 45, 33 A.2d 285 (1943).

Finally, claimant argues that the limitation period only began to run when the claimant first learned that she had sustained a herniated disk in her neck (January 20, 1971), instead of on the date of her injury (April 14, 1969). In support of this proposition, claimant has directed our attention to a number of medical malpractice cases in which the Supreme Court has held that a limitation period does not begin to run until the patient discovers the presence of the injury. *See, e.g., Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). However, the law in workmen's compensation cases is to the contrary. *Lewis v. Carnegie-Illinois Steel Corporation,* 159 Pa. Superior Ct. 226, 48 A.2d 120 (1946). *Cf. Ciabattoni v. Birdsboro Steel Foundry & Machine Company,* 386 Pa. 179, 125 A.2d 365 (1956).

We find all of claimant's other contentions to be without merit or irrelevant to the disposition of this appeal. Therefore, like the reluctant authorities below, we are also compelled by the applicable law to deny claimant her benefits because of the untimeliness of her petition.

### ORDER

And now, this 23rd day of April, 1976, the appeal of Madelyn Niemann from the order and opinion of the Workmen's Compensation Appeal Board, dated January 23, 1975, is hereby dismissed, and the order is affirmed.