512 A.2d 749

Charles Thomas Reilly, Petitioner *v.* Workmen's Compensation Appeal Board (General Electric Company), Respondents.

Argued December 10, 1985, before Judges Rogers and MacPhail, and Senior Judge Barbieri, sitting as a panel of three.

*Harold I. Goodman,* with him, *Loralyn McKinley,* for petitioner.

*Martin J. Fallon, Jr., Swartz, Campbell & Detweiler,* for respondent, General Electric Company.

Opinion by Senior Judge Barbieri, July 3, 1986:

Before the Court is the petition of Charles Thomas Reilly, Claimant, seeking review of an order of The Workmen's Compensation Appeal Board (Board), dated November 29, 1984, dismissing Claimant's Reinstatement Petition and denying Claimant's right to be heard on the basis of an appeal nunc pro tunc from a referee's decision, a decision which consisted of the recital of a stipulation and an order based thereon dismissing a claim petition. Unfortunately, the tortuous

and unduly prolonged course this case has taken in Claimant's efforts to achieve consideration by the compensation authorities of his claim on the merits is not yet over, since we must remand.

The basic question here is whether or not Claimant is entitled to a hearing on the merits of his case.

Proceedings originally were initiated in the customary fashion by Claim Petition, dated October 13, 1971, averring the happening of an "accident"[1] on or about December 18, 1970, while Claimant was engaged in his employment by General Electric Company, (Employer), when "an airline broke and a pipe hit me on the left side of head and neck" causing injury described: "I fell off platform and was bleeding from ear." The petition goes on to aver that Claimant was treated in the "dispensary [by] Dr. DiGiovanni, seeking disability for the period December 9, 1970 to on or about May 12, 1971." This petition was dismissed by a referee's order dated January 30, 1973, pursuant to a stipulation disavowing liability and calling for dismissal. The consideration paid for the agreement was $1,000. Proofs in this case are undisputed that at the time of the stipulation and the referee's dismissal of the petition Claimant was disabled from injuries suffered in or resulting from, the accident of December 18, 1970, with work-related total disability continuing during most of the time since that date. Claimant's medical expert, attending psychiatrist, testified that during his years of having Claimant for a patient, from February 1, 1972, Claimant has been disabled, attempting work briefly without success on one occasion early in the relationship.

---

[1] An "accident" was properly averred since the injury in this case occurred prior to the amendments of 1972 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, Section 301(a), *as amended,* 77 P.S. §431, requiring only proof of an injury rather than the previous requirement of an injury by accident as a basis for liability. A compensable event is not disputed.

The instant petition, titled "PETITION TO SET ASIDE REFEREE'S ORDER, TO REINSTATE CLAIM PETITION, AND TO AWARD BENEFITS," was filed by Claimant's present attorney after Claimant's experience with several attorneys, none of whom filed a petition on his behalf. The petition before us was filed on December 9, 1976 averring therein that the decision and order of January 30, 1973, was "null and void because it effectuated an illegal compromise of my workmen's compensation injury in violation of Section 407 of The Pennsylvania Workmen's Compensation Act, 77 P.S. §731;" "that the Stipulation upon which referee Stevenson's[2] order was based was fraudulently obtained;" that Claimant did not appeal the decision because he was hospitalized and incapacitated and thereafter was "misled by Bureau officials and also intentionally deceived by agents of my employer;" and that from "December 18, 1970 until January 17, 1973 I was disabled and unable to work except for sporadic periods. After January 17, 1973, I have not been able to return to work at all." This petition came before a referee other than Referee Stevenson, Referee Stander, who expressed the view in his decision of January 14, 1980 that he did not feel that he had the power or authority to consider a petition to set aside the decision of another referee, although adding that "Claimant's serious allegations deserve an opportunity to be heard by the proper tribunal under the Act. . . ." On appeal, in an opinion, the Workmen's Compensation Appeal Board (Board) noted Claimant's contention that the settlement on which Referee Stevenson's decision had been made was in violation of Section 407 of The Pennsylvania Workmen's Compensation Act, but ruled that the appeal be

---

[2] Referee Stevenson was the former referee who entered the order of January 30, 1973.

sustained and the dismissal of the petition set aside; and that "the instant petition shall be deemed a petition to appeal *nunc pro tunc*," referring the matter back to a referee to determine whether or not there was "fraud, deception, coercion or duress, or its equivalent," such "as to prevent Claimant from filing a timely appeal." The Board's decision was filed on September 4, 1980. On the remand, Referee Stander, after a hearing, made recommendations to the Board including recommended findings of fact, conclusions of law and a recommended order, the order containing a recommendation that the existing petition, "treated as a Petition for Allowance to Appeal Nunc Pro Tunc, be dismissed for lack of proof of the necessary elements of fraud, deception, coercion, duress or its equivalent; and for failure to timely file his present petition." On appeal, the Board filed its opinion and order under date of November 29, 1984, accepted the findings of fact recommended by the referee stating that it was only concerned with the reasons for delay in taking the appeal with the following statement and order:

> Claimant's counsel was notified by defendant on April 28, 1976 that the claimant had no valid claims against the company. We cannot find the delay of seven months after receiving that letter of the Reinstatement Petition to be a valid cause shown for allowing what we consider to be an appeal nunc pro tunc.

> ORDER

> The Claimant's Reinstatement Petition is dismissed and the Appeal Nunc Pro Tunc is denied.

After a review of the voluminous record in this case, we conclude that the Board erred in disregarding Claimant's averment that the agreement and stipulation based thereon, with the decision of referee Stevenson

dated January 30, 1973, were all part of an illegal compromise of Claimant's workmen's compensation claim in violation of Section 407 of The Pennsylvania Workmen's Compensation Act, under which that stipulation and decision became null and void[3] and that, therefore, the Claimant is entitled to have his case considered and determined on the merits. In support of this view, we will detail briefly the circumstances of the agreement and the factual pattern establishing that the agreement, stipulation and decision of the referee were patently false and in violation of the terms of The Pennsylvania Workmen's Compensation Act and, as noted, totally null and void.

First of all, Claimant has continued to be disabled through almost all of the period since December 14, 1972, the date of the last hearing held before the stipulation and referee's decision of January 30, 1973. Claimant during these years has had at least ten admissions to hospitals and, as noted and as will appear, the record of testimony before us contains no support for the factual statements in the stipulation but, in fact, the only medical testimony in the case, that of Claimant's medical witness, the attending psychiatrist, and that of the Employer, attributes Claimant's psychiatric disability to his employment: Claimant's medical witness attributes Claimant's continuing disability entirely to the injury of

---

[3] Section 407, 77 P.S. §731 provides:

On or after the seventh day after any injury shall have occurred, the employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under this act; but any agreement made prior to the seventh day after the injury shall have occurred, or permitting a commutation of payments contrary to the provisions of this act, or varying the amount to be paid or the period during which compensation shall be payable as provided in this act, shall be null and void.

December 18, 1970, while the Employer's psychiatrist attributes the Claimant's disability to his job in that it stems from Claimant's fear of being laid off.

It is necessary to recount in some detail certain of the procedural and other events which have influenced the course of the litigation that is now before us.

While we do not have the advantage of a record of what took place before Referee Stevenson prior to his decision of January 30, 1973, that decision does record that hearings were held on February 29, 1972, July 25, 1972, October 24, 1972 and "final hearing held on December 14, 1972, at which time the case was concluded pending submission of stipulation." Pursuant to the stipulation submitted to the referee, he filed the following:

FINDINGS

Prior to scheduling a further hearing in this matter, the Referee was in receipt of the following written stipulation:

STIPULATION

IT IS HEREBY STIPULATED AND AGREED by and between counsel for claimant and counsel for defendant, with the expressed understanding and agreement of the claimant that:[4]

1. The alleged incident of 18 December 1970, set forth in claimant's petition for compensation, did not result in any disability or loss of earning power; any disability or loss of earning power that claimant may have suffered thereafter, was due purely to causes entirely unrelated to any occurrence in the course of claimant's employ-

_____

[4] On the date of the referee's decision, on an admission of January 29, 1973, Claimant was an in-patient in a hospital for psychiatric patients, the Institute of Pennsylvania Hospital, having been under treatment there for "manic depressive illness" since February of 1972.

ment with defendant, including an automobile accident that occurred in June of 1972.

2. Claimant's petition for compensation shall be dismissed.

ORDER

Therefore the prayer and petition of the claimant is herewith DENIED and Claim Petition No. 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 is herewith DISMISSED in accordance with the facts set forth in the above stipulation and the applicable provisions of the Pennsylvania Workmen's Compensation Act.

No appeal was taken, since the stipulation was part of a settlement agreement based on taking no appeal. That agreement, however, did not, as indicated by the referee, conform with "applicable provisions of the Pennsylvania Workmen's Compensation Act."

The following scenario took place apparently completely off-the-record made before Referee Stevenson.

On August 7, 1972, counsel for the Employer's insurer wrote to Claimant's then current counsel the following:

Pursuant to our discussion of July 25, 1972 at the time of hearing in the above matter, we understand that you will obtain and furnish us with copies of your doctor's reports, *together with your thoughts regarding overall adjustment,* in order that we may consider this with our client, and determine too whether any defense medical evaluation will be required. (Emphasis added.)

On September 20, 1972, Claimant's counsel replied in a letter detailing medical and hospital expenses in a total of $7830.61, concluding that letter with a statement "if you think you will be in a position to discuss a settlement of this matter, please call me."

On October 24, 1972, Claimant's counsel in a longhand note to defense counsel stated "will recommend $1,000."

On December 15, 1972, defense counsel wrote to Claimant's counsel the following:

Pursuant to our discussion of 8 December 1972, we have prepared the enclosed stipulation which calls for dismissal of claimant's petition for compensation. Please have the stipulation signed by claimant, and then affix your signature as counsel. If you will return the executed stipulation to us, we will file same with Referee Stevenson. Upon the rendering of the Referee's decision, and *expiration of a statutory 20 day appeal period* thereafter, we will then obtain for you our client's draft in the sum of $1,000 to conclude this matter. (Emphasis added.)

The stipulation, of course, is the one recited by the referee in his decision of January 30, 1973, quoted above.

The referee's decision of January 30, 1973, was mailed February 9, 1973 with notice that appeal must be taken within twenty days of that date. Thus, the twenty days' appeal period presumably expired on March 1, 1973, and it was a condition of the settlement to allow this to happen. By letter of March 2, 1973, defense counsel forwarded to Claimant's lawyer the insurer's draft in the amount of $1,000.00, dated February 26, 1973.

A review of the medical records available to us indicates that on February 28, 1972, Claimant was hospitalized in "The Institute," a division of Pennsylvania Hospital in Philadelphia where he remained until March 1, 1972. In a letter from the Executive Medical Officer of The Institute, under date of February 15, 1977, ten admissions to The Institute are recorded from

February 28, 1972 to June 20, 1976. In the first admission notes and in other hospital records, the sole basis recorded to account for the Claimant's medical problems is the injury of December, 1970. For example, on the admission of February 28, 1972, there is recited: "PMH [past medical history] includes an injury (he was struck over the upper back and over the post. cervical region with an air hose) in Dec. 1970, and has since had frequent bouts of pain over those regions . . . PMH is otherwise not remarkable." There is not here or in any other medical records any support for contentions of defendant and statements by a referee[5] that automobile accidents or bar room brawls had anything to do with Claimant's disability. Claimant's attending physician, Jack H. Weinstein, M.D., Senior Attending Psychiatrist on the staff of The Institute, testified that he had been treating Claimant since February of 1972 for manic depressive illness. He testified:

___

[5] The referee's decision of September 13, 1982, contains the following "RECOMMENDED FINDINGS OF FACT:"

4. The Defendant has established that Claimant was indeed involved in a motor vehicle accident in June, 1972, on Walnut Street in the City of Philadelphia when he was rear-ended by another motor vehicle and that as a result of such automobile accident he filed a personal injury lawsuit.

5. In October, 1971, Claimant was involved in a brawl at a bar known as the 'Apple Pie' and was beaten about the head and face by several men, requiring hospitalization at Misericordia Hospital.

6. Although Claimant is attempting to repudiate the Stipulation as wholly untrue, the Defendant has established that Claimant has been involved in substantial non-occupational trauma.

There is no medical support for any inference that the enumerated non-occupational events played any role in Claimant's disability for which compensation is claimed. Furthermore, there is medical testimony that the brawling is a symptom of Claimant's disabling ailment, not a cause of it.

A. Manic depressive illness is a condition which varies and varies in intensity over a period of time. It may be marked by a complete remission during which time the person appears to be perfectly normal and can function just as well as he ever did, and other times when he may be psychotic and require institutionalization. Mr. Reilly suffers from fluctuations or cycles of this disorder but in the time I've known him he's never had a complete remission, he's never been completely normal.

Q. I take it just for the record that the word remission, normal, intangible terms so far as your [sic] concerned?

A. Yes except that remission may not be complete and so a person may be better but not meet the usual standards of being normal.

Q. Do you have an opinion as to whether or not Mr. Reilly's mental illness has disabled him, making him unable to work?

A. Yes during all the time I've known him he's been disabled and unable to work with the exception of a brief interval shortly after his neck operation when he seemed well enough to return to work, however, he was unable to maintain his ability to work and he left after a short time.[6]

Dr. Weinstein gave testimony that Claimant has not been able to return to work except for a brief period in 1972.

---

[6] Claimant was referred by Dr. Weinstein to an orthopedist, Dr. Raymond G. Tronzo, who admitted him to the Hospital of the University of Pennsylvania for the period March 13, 1972 to April 5, 1972 where myelogram studies were positive for a herniated nucleus pulposus at cervical vertibrae four to seven. An anterior fusion was performed at C4-5, C5-6, and C6-7.

Dr. Weinstein's opinion testimony unequivocally related Claimant's disability to the work injury of December 18, 1970. He testified:

> Q. Now doctor did you or have you formed an opinion as to whether or not Mr. Reilly's accident at General Electric Company on December 18, 1970 either aggravated or precipitated any emotional disorder he may have had?
> A. Yes.
> Q. What is your opinion?
> A. I believe that the accident, the injury and the pain that he suffered subsequently, inability to work, aggravated an emotional disorder.

Dr. Weinstein's further testimony is that Claimant's many illnesses so aggravated, render him incapable of employment; that his disability dates from approximately February 22, 1972; that he has returned to work at various times before January of 1973, but that following his admission on January 29, 1973 he has never returned to work.

Again, as to the relationship of Claimant's disability to the accidental injuries suffered on December 18, 1970, his testimony is unequivocal as follows:

> Since receiving more information from the patient I believe that his emotional disorder is directly related to his injury and incapacity that began in 1970.

Dr. Weinstein had previously testified as follows:

> Q. What is your opinion sir?
> A. I believe that the present psychiatric difficulties were precipitated by the injuries in 1970.

Page 4 of hearing on July 7, 1978.

Dr. Michael O. A. Grassi, a psychiatrist, called by Defendant, gave testimony based on a single examination on December 26, 1977. He explained that Claimant was disturbed by employer complaints on his going

to the company dispensary for treatment following his injury and also deeply disturbed by the threat of his being laid-off. Dr. Grassi's strongest statement appears in the re-direct examination by defense counsel as follows:

Q. Doctor, does it remain your opinion that the job insecurity or the threat of layoff was the cause of Mr. Reilly's psychiatric problems?

A. I think it is, yes, because, again, the time span and the proximity of that threat.

Q. To the onset of the problem?

A. Yes.[7]

Employer argues that the proscriptions in Section 407 of the Act are not applicable to nullify the kind of agreement on which the referee's decision of January 30, 1973 was based since the payment to accomplish the conclusion reached was designated as "a contribution toward medical expense," that there is authority for the proposition that such a device does not constitute an illegal settlement under section 407. We disagree. In *Seeley v. Galeton Lumber Co.*, 28 Pa. Commonwealth Ct. 382, 369 A.2d 903 (1977) we stated:

It is clear from our reading of the statute that Section 407 establishes three separate types of agreement which are null and void: (1) those entered into before the seventh day following an injury, (2) those permitting a commutation of payments contrary to the provisions of the Act, and (3) those varying the amount to be paid or the period during which compensation shall be

---

[7] Disabling mental illness is compensable when caused by stress resulting from changes of circumstances at work. *Bevilacqua v. Workmen's Compensation Appeal Board (J. Bevilacqua Sons)*, 82 Pa. Commonwealth Ct. 511, 475 A.2d 959 (1984). *See also McDonough v. Workmen's Compensation Appeal Board (Com. of Pa.)*, 80 Pa. Commonwealth Ct. 1, 470 A.2d 1099 (1984).

payable. The presence of these conditions, *either singly or in combination*, renders any purported agreement null and void. (Emphasis the Courts.) *Id.* at 384, 369 A.2d at 904.

Here, we have a clear case of an agreement "varying the amount to be paid" and the period during which compensation would be payable. Employer contends, however, that "a contribution to a medical expense when used as the basis for this settlement which results in disallowance of all benefits is not vulnerable to nullification under Section 407." We cannot agree. Here, first of all, the medical claim itself, as noted, was $7,830.61 as of September 20, 1972, so that the payment here did not honor the true amount payable even as to current medical benefits, with no payment, of course, in the form of weekly benefits which appear then to have been due.

In *Leaseway Systems, Inc. v. Workmen's Compensation Appeal Board (Beccerra),*[8] 53 Pa. Commonwealth Ct. 520, 418 A.2d 796 (1980) where there was an attempt by an agreement to establish a cut-off date for payments compensation and an attempt to waive interest on payments due, we held the agreement to be null and void under the provisions of Section 407, stating:

The agreement, as required by Section 407, is wholly null and void and unenforceable as to all provisions of the agreement and as to all parties. Bair v. Susquehanna Collieries Co., 335 Pa. 266, 269, 270, 6 A.2d 779, 780-81 (1939). In other words, *we must treat it as if it never existed.* The result of a decision such as this, of course, is that *the parties are returned to their*

---

[8] Cited with approval in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas),* 506 Pa. 592, 487 A.2d 794 (1985).

*status as it was before they entered into the agreement. Claimant's petition for compensation will be regarded as still pending before the referee and Claimant will bear the burden of proving his right to compensation and all the elements necessary to support an award.* Halaski v. Hilton Hotel, 487 Pa. 313, 317, 409 A.2d 367, 369 (1979); Fox v. Workmen's Compensation Appeal Board, 30 Pa. Commonwealth Ct. 93, 95, 373 A.2d 141, 142 (1977). (Emphasis added.)

We recognize that because Claimant's alleged injury occurred almost eight years ago the parties may have some difficulty reconstructing the evidence in this case. Notwithstanding the impact our decision may have on these parties as individuals, we recall and apply the reasoning of our Supreme Court in Bair v. Susquehanna Collieries Co. 335 Pa. at 270, 6 A.2d at 780, quoting from Woolsey v. Panhandle Refining Co., 131 Tex. 449, 456, 116 S.W.2d 675, 678 (1938):

'Refusing to enforce the agreement of settlement involved here will be far less disastrous to the great army of employees operating under this statute than to hold that under the law an employee and an employer can contract away the rights of the employee.'

*Id.* at 526-527, 418 A.2d at 799-800.

It is, of course, established in our determinations that a referee's decision based entirely upon such an illegal agreement is no more than part of the agreement and has no res judicata effect any more than an ordinary agreement would have, *Mosgo v. Workmen's Compensation Appeal Board (Tri-Area Beverage, Inc.),* 84 Pa. Commonwealth Ct. 316, 480 A.2d 1285 (1984); and that an agreement contrary to what the facts would call for

under the Act is null and void. *Spears v. Workmen's Compensation Appeal Board (Newman)*, 85 Pa. Commonwealth Ct. 346, 481 A.2d 1244 (1984). *Commonwealth of Pennsylvania v. Workmen's Compensation Appeal Board (Commercial Union Ins. Co. & Gary Palmer)*, 97 Pa. Commonwealth Ct. 520, 510 A.2d 373 (1986).

Employer, nevertheless, citing *Fox v. Workmen's Compensation Appeal Board*, 33 Pa. Commonwealth Ct. 575, 382 A.2d 494 (1978), contends that the payment of medical expenses as the price of an agreement to terminate the compensation proceedings is not there declared to be illegal. First of all, we do not find in *Fox* any indication that Section 407 was invoked, but rather the issue was whether or not an untimely modification petition, construed as a claim petition could be litigated and adjudicated as against the limitation contained in Section 315 of the Act. We there stated, however, that "in the absence of a showing of fraud or its equivalent," the limitation in Section 315 must be honored.[9]

Furthermore, it is not clear in this case that the $1,000.00 was paid in relief of medical charges since the check was marked "voluntary reimbursement of expenses." It is of no consequence, however, since we obviously have here a payment which is contrary to those authorized in the Act on the basis of which a determina-

---

[9] We have examined the other cases on which Employer relies, *Paolis v. Tower Hill Connellsville Coke Company*, 265 Pa. 291, 108 A. 638 (1919); *Guy v. Stoecklein Baking Company*, 133 Pa. Superior Ct. 38, 1 A.2d 839 (1938); *Rowles v. State Workmen's Insurance Fund*, 141 Pa. Superior Ct. 193, 14 A.2d 551 (1940); *Dennis v. E. J. Lavino & Company*, 203 Pa. Superior Ct. 357, 201 A.2d 276 (1964) and find them inapplicable. Those cases simply hold that the medical payments are not weekly payments of compensation to toll certain limitations in the Act.

We need not and do not decide here whether or not a violation under Section 407 is per se fraud.

tion on the merits was obviated.[10] In any event, a payment of less than the true amount of medical expenses would be a variation "in the amount to be paid,"[11] particularly since this Court has ruled that medical expenses are "compensation." *Duquesne Light Co. v. Diggs,* 46 Pa. Commonwealth Ct. 58, 406 A.2d 246 (1979), citing *Workmen's Compensation Appeal Board v. DelCimmuto,* 23 Pa. Commonwealth Ct. 43, 350 A.2d 459 (1976).

Defendant notes that claimant was paid sickness and accident benefits from Metropolitan Life Insurance Company, and our examination of the record indicates that the settlement agreement here may have had as one of its purposes the avoidance of a "lien," that Metropolitan may have had under Section 319 of the Act by way of subrogation,[12] but we point out that such agreements to avoid subrogation rights as provided in the Act are null and void under Section 407. *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas),* 506 Pa. 592, 487 A.2d 794 (1985), *Palmer.* In short, we know of no case where the payment terms of the Act have been disregarded in a settlement agreement which has not been held to be null and void when Section 407 has been invoked.[13]

---

[10] As of the time of this settlement, the medical bills amounted to $77,830.61.

[11] Section 407, 77 P.S. §731.

[12] In a letter from Claimant's former lawyer, Kenneth S. Hall, Esquire, dated January 2, 1973, the following statement appears:

You will note that this Stipulation would indicate that your injury that you are claiming had nothing to do with an incident that occurred on December 18, 1970. This statement is necessary in order to close-out the matter. This statement will have the effect of removing any lien which Metropolitan Insurance Company may have against any proceeds of settlement.

[13] For example, an agreement to take sick-leave pay in lieu of benefits under the Act is null and void under Section 407. *Temple*

For the reasons stated, we will reverse and as in *Leaseway* we will remand the record in this case for proceedings not inconsistent with this opinion on the original claim petition filed October 13, 1971.

ORDER

Now, July 3, 1986, the opinion of the Workmen's Compensation Appeal Board as of No. A-84746, dated November 29, 1984, is reversed, and this case is remanded for proceedings on the original claim petition filed October 13, 1971, such proceedings to be not inconsistent with this opinion.

Jurisdiction relinquished.

---

*v. Pennsylvania Department of Highways*, 445 Pa. 539, 285 A.2d 137 (1971). Employee could not enforce agreement whereby employer promised to employ him for life if employee would accept one-half of the weeks of compensation due. Held illegal and unenforceable under Section 407. *Bair v. Susquehanna Collieries Co.*, 335 Pa. 266, 6 A.2d 779 (1939). Agreement purporting to be the resolution of a commutation proceeding was a settlement contrary to the Act, altering the amount of compensation to be paid and the time during which it was to be paid and, therefore, was null and void under Section 407 of the Act. *Green v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 143, 401 A.2d 1243 (1979).