586 A.2d 522

Robert CAHILL, Petitioner,

v.

## WORKMEN'S COMPENSATION APPEAL BOARD (NORTH AMERICAN COAL CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 12, 1990.

Decided Jan. 31, 1991.

444

Timothy P. Creany, Pawlowski, Creany & Tulowitzki, Ebensburg, for petitioner.

Nancy M. Harris, Tillman & Thompson, Pittsburgh, for respondent.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Robert Cahill (Claimant) seeks review of the decision and order of the Workmen's Compensation Appeal Board

(Board) which reversed the referee's reinstatement of total disability benefits to Claimant pursuant to The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

Two issues are presented for our consideration: (1) whether the referee properly reinstated total disability benefits, despite Claimant's failure to establish an increase in his work-related disability, where the referee found that the supplemental agreement reducing Claimant's entitlement from total to partial was incorrect in a material respect and (2) whether the referee properly reinstated benefits for total disability after the full 500 weeks of partial disability entitlement was paid to Claimant.[1]

■ Our scope of review is, of course, limited to determining whether or not the necessary findings of fact were supported by substantial evidence, an error of law was committed or constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). Having reviewed the record as well as relevant case law and statutory authority, we find that the Board erred in reversing the referee's award.

Relevant to our disposition are the following findings of fact made by the referee:

1. The claimant, Robert Cahill, filed a Petition for Modification of Compensation on February 19, 1987. In his petition, the claimant alleged that disability caused by his injury which occurred on September 15, 1972 changed from partial to total disability as of December 16, 1986.

. . . .

3. The defendant [North American Coal Corporation (Employer)] and the claimant executed an Agreement for Compensation in which the claimant's injury is described

---

1. Section 306(b) of the Act, 77 P.S. § 512, directs, *inter alia*, that compensation for partial disability "shall be paid during the period of such partial disability ..., but for not more than five hundred weeks."

as a fractured pelvis and internal injuries, and the weekly disability rate provided is $94.00 based upon an average weekly wage of $235.50.

4. The defendant and the claimant executed a Supplemental Agreement dated December 28, 1979 wherein they agreed that the claimant returned to work on March 5, 1977 at reduced earning power and agreed that the claimant is entitled to compensation for 500 weeks on and after March 5, 1977 for partial disability at a rate of $79.67 per week.[2]

5. The defendant paid compensation to the claimant for 500 weeks for his partial disability beginning March 5, 1977. This time period ended on October 5, 1986.

. . . .

7. The claimant submitted a deposition of George H. Wheeling, M.D. Dr. Wheeling is a Board certified orthopedic surgeon. He first examined the claimant for his work related injury in August, 1978. His last examination of the claimant was on December 17, 1986. Dr. Wheeling testified that the claimant was unable to return to his coal mine work in 1978 because of his work related injury and he remains so disabled to the present time. He testified that although there has been some modest improvement in the claimant's condition, he has not im-

---

**2.** This supplemental agreement, filed February 15, 1980, states in relevant part:

> The claimant returned to work and it is agreed that he is entitled to receive compensation on the basis of loss in earning power. At the time of the accident which occurred on 9–15–72, he had established an average weekly wage wage [sic] of $235.50, he has now established an average weekly rate of $116.00 per week, reflecting a loss of wages of $119.50 per week. Hence he is entitled to receive compensation at the rate of 66⅔% of $119.50 or $79.67.
>
> It is further agreed that on and after 3–5–77 compensation shall be payable to the said employee at the rate of $79.67 per week for 500 weeks; ... Further matters agreed upon: Under terms of agreement dated 9–29–72 claimant was paid compensation for temporary total disability ... Claimant worked from 7–9–73 to 7–25–73, and from 7–26–76 to 3–4–77.

proved to a point where he is employable.[3]

8. During cross examination, Dr. Wheeling agreed that the claimant could do light semi-sedentary work which allowed him to change his position as needed and that he remains able to perform such work at the present time.

. . . .

10. The claimant remains partially disabled. There has not been any change in the degree of that partial disability since March 5, 1977.

11. The claimant did not return to work on March 5, 1977, nor has he been employed at any time since that date. In making this finding [sic] of Fact, I have accepted the pertinent testimony of the claimant as creditable [sic].

12. Other than the statement, contrary to fact, in the Supplemental Agreement that the claimant returned to work on March 5, 1977, there has never been an agreement that work is available to the claimant which he is able to perform within the limitations imposed upon him by his injury.

13. The defendant has never shown that work is available to the claimant which he is able to perform within the limitations imposed upon him by his injury.

3. Dr. Wheeling's testimony indicates that Claimant was virtually unemployable after both examinations being limited to light semi-sedentary work which allowed him to change his position as needed. Dr. Wheeling's Deposition, pp. 7–8, 11. More specifically, Dr. Wheeling testified, "I don't feel that he can work in any capacity at all. [sic] Because [sic] he can't sit for prolonged periods of time, can't stand or walk for prolonged periods of time and any prospective employment would have to allow for these things and it is practically impossible to find that kind of job where he can sit or lay down or change position as frequently and as often as he needs." Id., pp. 7–8. As the late Justice Musmanno stated, "Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof of that fact is not presented, the claimant then is entitled to a finding of total disability." Unora v. Glen Alden Coal Co., 377 Pa. 7, 13, 104 A.2d 104, 107 (1954).

14. I have considered the claimant's petition to be one for reinstatement of compensation for total disability.[4]

Findings of Fact Nos. 1, 3–5, 7–8, 10–14 (footnotes added).[5] Based thereon, the referee concluded that:

2. Pursuant to Sections 315[6] and 413(a) [sic][7] of the Workmen's Compensation Act, a Petition for Reinstatement of Compensation may be filed at anytime [sic] during the three year period immediately following the last payment of disability compensation. Since the claimant filed his petition within that time period it is properly and timely filed.

3. Because of the fundamental mis-statement in the Supplemental Agreement dated December 28, 1979, that the claimant returned to work on March 5, 1977, the claimant does not have to show a worsening in his compensable disability. Because of this mis-statement, the defendant has the burden of showing that work is available to the claimant which he is able to perform within the limitations imposed upon him by this work related injury. The defendant did not meet this burden.

4. The claimant is entitled to compensation for total disability beginning with the expiration of his partial disability compensation after October 5, 1986 and continuing as provided by the Workmen's Compensation Act for total disability.[8]

4. The form of the petition is not controlling. If a claimant is entitled to relief under any section of the Act, the petition will be considered as filed under such section. *Andersen v. Workmen's Compensation Appeal Board (National Forge Co.),* 113 Pa.Commonwealth Ct. 601, 537 A.2d 971 (1988); *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Pecora),* 82 Pa.Commonwealth Ct. 538, 475 A.2d 972 (1984).

5. Although not noted by the referee, the instant injury and disability resulted when Claimant was involved in a rock fall at work. N.T., June 17, 1987 Hearing, p. 8; Agreement for Compensation, time-stamped October 4, 1972.

6. 77 P.S. § 602.

7. 77 P.S. §§ 771, 772.

8. While the referee's conclusion of total disability appears to be inconsistent with his finding of partial disability, the type of partial disability referred to by the referee is actually total disability pursuant

Conclusions of Law Nos. 2–4 (footnotes added). The Board, in reversing the referee's award, stated that Claimant failed to sustain his burden of establishing an increase in, or recurrence of, his disability subsequent to the date of the supplemental agreement so as to justify reinstatement of benefits.

Preliminarily, we note that this case is actually premised upon a petition to review and set aside a supplemental agreement on the basis that it is a false and illegal agreement. The referee found, which finding is supported by substantial evidence, that Claimant never returned to work as stated in the supplemental agreement.

■ Although the referee treated Claimant's petition as one for reinstatement, presumably under the second paragraph of Section 413 of the Act, 77 P.S. § 772, it is instead a petition seeking to review and set aside the supplemental agreement, first paragraph of Section 413 of the Act, 77 P.S. § 771,[9] on the basis of illegality under Section 407 of the Act, 77 P.S. § 731,[10] which states in relevant part that:

the employer ... and employe ... may agree upon the compensation payable to the employe ... under this act; but any agreement ... varying the amount to be paid or the period during which compensation shall be payable as provided in this act, shall be wholly null and void....

to *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) and the older Supreme Court cases upon which it relies. In *Kachinski*, our Supreme Court stated that a partially disabled claimant would be entitled to total disability benefits where his or her employer failed to establish that work was actually available to the claimant within the "category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc." *Id.*, 516 Pa. at 252, 532 A.2d at 380.

9. This paragraph provides in relevant part that "[a] referee ... may, at any time, review and ... set aside a ... supplemental agreement ... if it be proved that such ... agreement was in any material respect incorrect."

10. We may, of course, construe Claimant's petition under any section of the Act which supports relief in accordance with the record before us. *See* n. 4; *see also Leaseway Systems, Inc. v. Workmen's Compensation Appeal Board*, 53 Pa.Commonwealth Ct. 520, 418 A.2d 796 (1980) where we approved the Board's decision, which was made on "its own motion," that a compensation agreement violated Section 407 of the Act, 77 P.S. § 731, and was thus null and void.

Here, we are presented with a clear case of a supplemental agreement falsely providing for a reduction of total disability, thus "varying the amount to be paid" and the period during which compensation would be payable.

Employer, although conceding that Claimant never returned to work on and after March 5, 1977,[11] nonetheless contends that the statement in the supplemental agreement that Claimant returned to work serves as a binding stipulation on the parties to the agreement, both of whom acted on the advice of counsel, and, as such, is likewise binding on the workmen's compensation authorities.

 Having reviewed the record, we find no evidence that Claimant acted pursuant to advice of counsel. In any event, advice of counsel cannot immunize a false stipulation, upon which a compensation agreement is premised, from the consequences set forth in Section 407 of the Act, 77 P.S. § 731. *See Reilly v. Workmen's Compensation Appeal Board (General Electric Co.)*, 98 Pa.Commonwealth Ct. 488, 512 A.2d 749 (1986), *petitions for allowance of appeal denied*, 514 Pa. 650, 651, 524 A.2d 496 (1987); *see also Spears v. Workmen's Compensation Appeal Board (Newman and Co.)*, 85 Pa.Commonwealth Ct. 346, 481 A.2d 1244 (1984). A compensation agreement founded upon false facts, and thus contrary to what the facts would call for under the Act, is null and void. *Reilly; Spears.*

 In short, while it is true that parties may stipulate to the extent of a claimant's loss of earning power at a given time, if such stipulation is false and adversely affects substantial rights to which a claimant is entitled under the Act, thereby rendering the compensation agreement illegal and thus null and void under Section 407 of the Act, 77 P.S. § 731, the stipulation cannot be accorded the binding effect sought by Employer here.[12]

11. Respondent's Brief, p. 14.

12. We note in passing that *Rosenbaum v. Workmen's Compensation Appeal Board*, 48 Pa.Commonwealth Ct. 213, 408 A.2d 1209 (1979), relied on by Employer, is inapplicable here. First, *Rosenbaum* involved Section 408 of the Act, 77 P.S. § 732, and not Section 407 of the

 Employer likewise contends that Section 413 of the Act, 77 P.S. §§ 771, 772, relates only to existing agreements and cannot be applied here because the supplemental agreement expired once Claimant received partial disability compensation for the full statutory period of 500 weeks. We disagree.

Employer's argument fails to consider the consequences of Section 407 of the Act, 77 P.S. § 731. Once Section 407 is successfully invoked, as here, the compensation agreement "is *wholly* null and void and unenforceable as to *all* provisions of the agreement and as to all parties." *Leaseway Systems, Inc. v. Workmen's Compensation Appeal Board*, 53 Pa.Commonwealth Ct. 520, 526, 418 A.2d 796, 799 (1980) (emphasis in original and emphasis added), cited with approval in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board*, 506 Pa. 592, 487 A.2d 794 (1985). This would, of course, include the 500–week period raised by Employer and, accordingly, expiration thereof is irrelevant and cannot be a limitation here. We now hold that petitions to review and set aside compensation agreements, Section 413 of the Act, 77 P.S. § 771, on the basis of illegality under Section 407 of the Act, 77 P.S. § 731, are properly acted upon if filed, as here, within three years of the last payment thereunder. Section 413 of the Act, 77 P.S. § 772.

 In any event, for all practical intents and purposes, we have an existing agreement here by operation of law, that being the original agreement for compensation. Because the supplemental agreement in question is contrary to

Act, 77 P.S. § 731, as here. Furthermore, in *Rosenbaum*, we were reviewing the Board's affirmance of a referee's *refusal* to set aside a fully satisfied settlement agreement presumably because the referee found that the claimant failed to provide a sufficient basis for setting aside the agreement, which, of course, is not the factual situation presently before us.

We likewise find Employer's reliance on *Singer v. Workmen's Compensation Appeal Board (Fruehauf and CNA Insurance Co.)*, 90 Pa. Commonwealth Ct. 441, 496 A.2d 67 (1985) misplaced. *Singer* is also inapplicable, where, as here, there is an illegal supplemental agreement involving substantial rights and clearly no concession by Claimant that he returned to work.

the Act and, as such, null and void as to all of its provisions, the parties must be returned to the status quo existing prior to the improper° reduction in benefits. *Leaseway Systems, Inc.* Accordingly, Claimant must be returned to the status of total disability since Employer has offered no evidence other than the null and void supplemental agreement to establish entitlement to a reduction of Claimant's benefits from total to partial. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987); *Leaseway Systems, Inc.*

Quite clearly, Employer is now, and has been since the effective date of the supplemental agreement, obligated under the Act to provide compensation to Claimant for total disability, which payments, of course, continue indefinitely unless and until Employer properly establishes entitlement to a reduction or cessation thereof. In relying exclusively upon the false stipulation in the supplemental agreement, the falsity of which Employer concedes, Employer failed to show that suitable work was actually available to Claimant from March 5, 1977 to the present, which burden, as previously noted, had to be sustained prior to properly effecting a reduction in Claimant's benefits. *Kachinski.*

It goes without saying that this burden cannot be sustained by submission of a false stipulation in a supplemental agreement which is clearly contrary to the Act. To conclude otherwise would allow an employer, such as Employer here, to effectuate a reduction in its obligation to an injured employe without having properly established entitlement thereto as required under the Act. Such circumvention of the Act cannot be condoned without sterilizing the provisions thereof, which we decline to do.

Accordingly, under the circumstances presented here, the referee was correct in concluding that it was not necessary for Claimant to establish an increase in his work-related disability. Because the supplemental agreement is illegal under Section 407 of the Act, 77 P.S. § 731, it is wholly null and void and the parties must be returned to the status they occupied prior to entering into this agreement which im-

properly reduced Claimant's benefits from total to partial. Claimant must therefore be regarded as totally disabled and Employer, in order to alter its liability for payment of compensation for total disability, must establish either that Claimant's work-related disability has ceased or been reduced and, if reduced, that suitable work is actually available to Claimant.

Likewise, the referee was not precluded from acting on Claimant's petition because filed after the "expiration" of the null and void supplemental agreement. The limitation contained therein, which caused the agreement to "expire" after 500 weeks, is also null and void, with the parties being returned to the status, noted above, and the original agreement for total disability compensation reactivated by operation of law. Claimant's true status of total disability, of course, has no time limitation.

■ However, the referee erred in directing "compensation for total disability beginning with the expiration of [Claimant's] partial disability compensation after October 5, 1986." Conclusion of Law No. 4; *see also* Order. Compensation for total disability should instead commence as of March 5, 1977, the date Claimant's benefits were improperly reduced from total to partial, with credit given to Employer for any and all partial disability payments made on and after March 5, 1977.

For the foregoing reasons, we will reverse the order of the Board, thereby reinstating the referee's decision, as modified, and direct that Claimant be paid compensation for total disability commencing March 5, 1977, with credit given to Employer for any and all partial disability payments made on and after March 5, 1977; with interest on due and unpaid portions of weekly benefits according to law.

## ORDER

AND NOW, this 31st day of January, 1991, the decision and order of the Workmen's Compensation Appeal Board, at No. A–94770, dated March 12, 1990, is hereby reversed.

The referee's decision, dated November 2, 1987, is reinstated, as modified by the foregoing opinion, and North American Coal Corporation is directed to pay Robert Cahill compensation for total disability commencing March 5, 1977, with credit for any and all payments of partial disability made on and after March 5, 1977; with interest on each unpaid weekly amount from the respective due dates thereof.

PALLADINO, Judge, dissenting.

I respectfully dissent.

The majority has incorrectly concluded that the referee was within his authority in setting aside the supplemental agreement dated December 28, 1979 (1979 Agreement). Additionally, assuming the referee was correct in setting aside the 1979 Agreement, and the proceeding is addressed as a petition for reinstatement, the petition for reinstatement is barred by the statute of limitations.

Robert Cahill (Claimant) suffered a work-related injury on September 15, 1972. Pursuant to an agreement for compensation, dated September 29, 1972, Claimant received total disability benefits. Claimant thereafter returned to work, executing a final receipt dated July 19, 1973. Claimant then suffered a reoccurrence of the injury, and pursuant to a supplemental agreement dated July 30, 1973, again received total disability benefits. Subsequently, the 1979 Agreement was entered into, by the terms of which the Claimant received partial disability benefits, with the statutory benefit period expiring on October 5, 1986. In a modification petition dated February 13, 1987, Claimant sought to modify the compensation agreement, listing as the sole reason for the petition, "Claimant's disability has changed from partial to total disability as of December 17, 1986." In support of this petition, Claimant stated the following: "Physical examination of December 17, 1986 supports the fact that Claimant is now totally disabled." Modification Petition.

The referee considered the petition as one for reinstatement of compensation for total disability, and held that because of a "fundamental mis-statement" [sic] Conclusion of Law 3, in the 1979 Agreement, Claimant did not have to show a worsening in his compensable disability, and because there was no showing that work was available which Claimant could perform, Claimant was entitled to total disability benefits.

While the form of the petition is not controlling, *Andersen v. Workmen's Compensation Appeal Board (National Forge Co.)*, 113 Pa.Commonwealth Ct. 601, 537 A.2d 971 (1988), the referee, Board, and this court are only permitted to change the form if the allegations and remedy sought in the petition support such a change. *See Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Pecora)*, 82 Pa.Commonwealth Ct. 538, 475 A.2d 972 (1984). In the instant case, changing the form of the petition from one seeking modification to one seeking reinstatement is supported by the petition filed by Claimant. However, the majority's conclusion that this is a petition to review and set aside a supplemental agreement on the basis that it is a false and illegal agreement is not supported by the allegations within the petition. Such a change is not a change in form, but a change in substance, and is contrary to the constitutional guarantee of due process.

The fundamental maxim of procedural due process is that a party must be given notice of an issue to be adjudicated before a decision can be rendered. In the instant matter the petition filed by the Claimant raised a single issue: whether the Claimant's disability had "changed from partial to total disability as of December 17, 1986." Modification Petition. This petition did not allege any error in the 1979 Agreement, nor did the Claimant argue in the petition that the 1979 Agreement was procured by fraud. The Claimant merely alleged that his disability had increased. The referee exceeded his authority by addressing issues not raised by the Claimant and basing his grant of benefits on those issues. Neither the referee nor this court has the authority

to create issues for a petitioner. This is exactly what the majority opinion seeks to accomplish.

Furthermore, no evidence was presented to contradict the facts contained in the 1979 Agreement,[1] or to even indicate that if the document itself contained a misstatement of fact, that the 1979 Agreement was illegal under the Act, and/or did not express the intent of the parties. Accordingly, there is no evidence to support the referee's finding of fact that "there has never been an agreement that work is available to the claimant which he is able to perform within the limitations imposed upon him by his injury." Finding of Fact 12.

On the second issue, assuming that the petition was sufficient to raise the issue relied upon by the referee for his decision, and concluding, as the majority proposes, that the supplemental agreement is null and void, it must be considered null and void in toto. *Leaseway Systems, Inc. v. Workmen's Compensation Appeal Board*, 53 Pa.Commonwealth Ct. 520, 418 A.2d 796 (1980). As stated by the court in *Leaseway:*

> The agreement, as required by Section 407, is *wholly* null and void and unenforceable as to all provisions of the agreement and as to all parties ... In other words, we must treat it as if it never existed. The result of a decision such as this, of course, is that the parties are returned to their status as it was before they entered into the agreement.

*Id.,* 53 Pa.Commonwealth Ct. at 526, 418 A.2d at 799 (emphasis in original) (citation omitted). Applying this mandate to the facts in this case, all compensation payments ceased as of the date noted in the 1979 Agreement. As a result, the calculation of the period for filing additional claims, for statute of limitations purposes, must be from the date that total disability payments ceased, i.e. March 5, 1977. Accordingly, a petition filed on February 13, 1987, is barred by the three year statute of limitations.

---

**1.** While the Employer now admits that Claimant did not return to work, this admission was not present in the record before the referee.